# Commonwealth *v.* Latampa, Appellant.

*Criminal law—Murder—Declarations of deceased—Evidence.*

1. At a murder trial the declarations of the murdered man are admissible, although made more than two hours after the shooting, and at a time when the deceased was able to walk a considerable distance, and although he did not die until the fourth day afterwards; and such declarations are admissible although a doctor told the deceased that the wound was not necessarily fatal, if it appears that notwithstanding such assurance the deceased believed that he was dying, and did in fact die from the wound. The test was the state of the mind of the deceased when making the declarations, and whether they were made under a sense of impending death.

2. On such a trial the admission of evidence that the prisoner had a prejudice against natives of Calabria of whom the deceased was one, is not error. Such evidence in some degree tends to show motive, and is proper for the jury's consideration in determining the degree of the crime.

Argued Oct. 4, 1909. Appeal, No. 182, Jan. T., 1909, by defendant, from judgment of O. & T. Clinton Co., Jan. T., 1909, No. 1, on verdict of guilty of murder of the first degree in case of Commonwealth v. Frank Latampa. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Indictment for murder.   Before HALL, P. J.

Giuseppi Fredericco was called and sworn as a witness for the commonwealth.

It is proposed to prove by this witness that Antonio Mazzina, the deceased, was well known to him; that said Mazzina boarded at the house of witness at the time he was shot; that witness saw Mazzina the night of the shooting and after he was shot, at the house of the witness; that Mazzina was badly wounded and talked with witness and said he had been shot and was dying or would die as he believed; that he had been shot by Frank Latampa, the defendant, at the house of John Curcio a short time before; that he said Latampa shot him, that he, Mazzina, was only a few feet from Latampa on the porch at Curcio's house when the shot was fired; that Latampa was standing in the kitchen door of Curcio's house when he shot him; that he, Mazzina, had no grudge against Latampa and did not know why he shot him; that witness saw the gunshot wound on Mazzina's body; that witness was sent to come to his house; that this conversation took place about 9:30 or 9:45 P. M. the night of the shooting.

This is offered to show the dying declaration of Mazzina that the defendant shot him and also as part of the res gestæ, and that defendant shot and killed Mazzina.

The defendant objects to the offer for the following reasons:

1. The testimony in the case shows the shooting to have occurred about 7:45 o'clock, more than two hours before the alleged conversation, and that the deceased had been in another house, had traveled a long distance and had conversed with various persons a long time before the alleged conversation, that the matter proposed to be proved would not therefore be a part of the res gestæ.

2. The testimony of Dr. Gilmore shows that he informed the deceased that he had an equal chance of living if he were taken to the hospital and that the wound was not necessarily fatal, if he were not taken to the hospital, that the deceased at the time was strong enough to walk to the train and in fact was not in a dying condition but lived four days afterward as shown by the testimony of the commonwealth; the alleged

conversation would therefore not be admissible as a dying declaration.

3. The offer is hearsay evidence.

4. The offer is irrelevant and incompetent.

The Court: The offer is admitted, objection overruled and bill sealed for the defendant. [1]

The defendant offers to prove by Dr. J. K. Gilmore, the physician and surgeon who attended the deceased, that he visited him at 9 o'clock on the night on which he was shot; that he stated to him that he would have an equal chance of recovery if he would go to the hospital and submit to an operation; that the deceased said to the doctor that, "If I have a chance to get well I will go to the hospital," and thereupon consented to be taken to the hospital; to be followed by proof that he actually was taken to the hospital at Lock Haven. This for the purpose of showing that the deceased did not actually believe that death was impending at the time he made the alleged declaration.

The Court: The court is of the opinion that all this testimony has in substance already been offered. We will permit Dr. Gilmore to be called later, however, but at present we will proceed with the testimony of the witness on the stand and seal a bill for the defendant. [2]

Mr. Hipple: We offer to prove by the witness on the stand that Latampa knew Anthony Mazzina was a Calabrian, a native of the province of Calabria, Italy; that he talked with Latampa when Mazzina was in sight one or more times and called him, spoke of him as a Calabrian; that Latampa said the Calabrians were no good, it would be better to take a gun and shoot him. He called the Calabrians sons of bitches; that he blamed his wife with running away with a man by the name of Ferzina who was a Calabrian, and that Latampa made like statements showing hostility to the Calabrians as a class. This to be followed by evidence of other witnesses of like import concerning the Calabrians, and for the purpose of showing a hostile mind on the part of Latampa against Calabrians as a class or people, and to show a malicious disposition of Latampa against this special class of people, and thus to show

malice against Anthony Mazzina as a member of that class or one of that class as a Calabrian.

Counsel for defendant objects:

1. Because the offer is too indefinite.

2. Because it does not tend to show malice against the deceased.

3. Incompetent for the purpose.

4. Irrelevant.

The Court: General threats to kill a certain class of persons which included the deceased but not having reference to any particular person are admissible for the purpose of establishing malice and an intent to kill of which the deceased became the victim. The more specific the design the greater its probative value. There may come a point at which the design is too indefinite in its indications to be of any probative value, but the mere fact that it is generic, that it points toward a class of acts, does not destroy its relevancy providing the purpose naturally includes the act charged. But it is for the jury to determine whether such threats had reference to the person killed and whether he did come within the scope of the threats. All of these matters are questions of fact for the jury which will be submitted to them under proper instructions when it becomes our duty to charge them in this case. The offer is therefore, admitted, objection overruled and bill sealed for the defendant. [3]

Verdict of guilty of murder of the first degree, upon which judgment and sentence were passed.

*Errors assigned* were (1–3) rulings on evidence, quoting the bill of exceptions.

*R. B. McCormick*, with him *W. C. Kress*, for appellant.

*H. T. Hall*, district attorney, and *T. C. Hipple*, assistant district attorney, for appellee, were not heard.

Per Curiam, October 25, 1909:

The principal errors alleged relate to the admission of the dying declarations of the murdered man. They were made

more than two hours after the shooting, at a time when the deceased was able to walk a considerable distance, and he did not die until the fourth day after. These circumstances though proper for the jury's consideration in determining the weight to be given to the declarations did not make them inadmissible. The test is the state of mind of the deceased when making them and whether they were made under a sense of impending death. In Kehoe v. Com., 85 Pa. 127, the circumstances were very similar and it was held that the declarations were properly admitted.

The same view applies to the testimony of Dr. Gilmore that the wound was not necessarily fatal. Notwithstanding the doctor's assurance the deceased believed he was dying and did in fact die from it.

The admission of evidence that the prisoner had a prejudice against natives of Calabria, of whom the deceased was one, was not error. It tended in some degree to show motive, and while the commonwealth was not obliged to show motive if the killing was proved, yet it was a natural part of the case and proper for the jury's consideration in determining the degree of the crime.

Judgment affirmed and record remitted for purpose of execution.