# Commonwealth *v.* Abel, Appellant.

*Criminal law—Evidence—Confessions—Dying declarations.*

1. Where at the trial of an indictment for murder, a statement signed by the prisoner setting forth that it was made of his own free will and accord, that he had shot the deceased, but that the shooting was accidental, was offered in evidence, and where it appeared that no promise has been held out to defendant to induce him to make the statement; that defendant knew that it would be used against him, that he could read and write and that he was aware of the contents of the paper when he signed it, and where defendant did not deny that the statement was made voluntarily, the trial judge properly admitted the evidence.

2. On the trial of a murder case the court did not err in admitting in evidence, on behalf of the Commonwealth, a statement of the deceased, a boy of twelve years, made two hours before his death, describing the circumstances under which he was attacked, where it appeared that after the boy was shot he was taken to a hospital where he was told by a physician that his condition was serious; that he was a Catholic and received from a priest the last rites of the church, which are only administered when danger of death is imminent; that after he was operated upon he asked his father to have him buried in the country in case of death; and the next day, after being told by the physician that he would not live much longer, he was asked to tell all he knew about the attack, and thereupon nodded his head and told his story.

*Murder—Degree of guilt—Murder of the first degree.*

3. A conviction of murder of the first degree, and sentence of death, were justified by the evidence, where it appeared that defendant had attempted to commit an unnatural crime upon deceased; that deceased had struggled to escape and defendant shot him in a vital part of the body, holding the revolver so close as to singe and blacken the flesh, and then ran away; and deceased died from the wound the next day.

Argued Feb. 16, 1914. Appeal, No. 32, Jan. T., 1914, by defendant, from sentence of O. & T. Philadelphia Co., May Sessions, 1913, No. 617, on verdict of guilty of murder of the first degree in case of Commonwealth of Pennsylvania v. William Abel. Before FELL, C. J.,

MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Indictment for murder.  Before ORMEROD, J.

From the record it appeared that the evidence was not contradicted that the defendant had attempted to commit an unnatural crime upon the deceased, a boy of about twelve years, that the boy struggled to escape from defendant, and that defendant then drew a revolver and shot deceased in a vital part of his body, and ran away. The deceased was taken to a hospital where he died the next day.

Other facts appear in the opinion of the Supreme Court.

The jury found a verdict of guilty of murder in the first degree upon which sentence of death was passed. Defendant appealed.

*Errors assigned,* among others, were rulings on evidence, and the judgment of the court.

*Peter M. MacLaren,* with him *John R. McLean, Jr.,* for appellant.—The confession introduced in evidence was not voluntary.

The testimony relating to the death bed statements of the deceased did not show that they were made under the apprehension of death, and was inadmissible: Kane v. Com., 109 Pa. 541; Sullivan v. Com., 93 Pa. 284; Com. v. Williams, 2 Ash 69; Kilpatrick v. Com., 31 Pa. 198.

A verdict of first degree murder was not warranted by the evidence: Kehoe v. Com., 85 Pa. 127; Small v. Com., 91 Pa. 304; Com. v. Rhoads, 23 Pa. Superior Ct. 512.

*Joseph H. Taulane,* Assistant District Attorney, with him *Samuel P. Rotan,* District Attorney, for appellee.— The death bed statements were admissible as dying declarations: Kilpatrick v. Com., 31 Pa. 198; Com. v. Win-

kelman, 12 Pa. Superior Ct. 497; State v. Gray, 43 Oregon, 446; Mattox v. United States, 146 U. S. 140; Com. v. Williams, 2 Ashmead 69.

A deliberate and wilful intent to take life may be inferred from the use of a deadly weapon on a vital part of the body: Com. v. Drum, 58 Pa. 9; Kilpatrick v. Com., 31 Pa. 198.

OPINION BY MR. JUSTICE POTTER, May 4, 1914:

It appears from this record that at a Court of Oyer and Terminer for the County of Philadelphia, William Abel, the defendant, was indicted, tried, convicted of murder of the first degree, and sentenced. The first assignment of error is, that the learned court erred in admitting as evidence in the case an alleged voluntary statement, made by the defendant. It is suggested in the argument that undue pressure was brought to bear on the prisoner in order to procure the statement. This suggestion is not strongly pressed, however, and our reading of the evidence has not satisfied us that any undue pressure was brought to bear. The testimony shows that the statement was made without any promises whatsoever being made to the prisoner, and with the knowledge upon his part, that it would be used against him at the trial. The defendant can read and write; and it appears that he signed the statement knowing its contents, and knowing that it set forth that it was made of his own free will and accord. In the statement he admitted that he shot the boy, but claimed that it was accidental. In view of these facts, and in the absence of any denial on the part of the defendant that the statement was made voluntarily we think it was admissible against him.

The second assignment relates to the admission in evidence upon the trial, as a dying declaration, of a statement alleged to have been made in the hospital by the boy, Thomas Kane, who was shot, and who died as a result thereof. We think the requisites for the admis-

sion of the declaration existed in the present case. The
testimony shows that after the boy was shot and was
taken to the hospital he was advised by the physician in
charge that his condition was serious. That it was doubt-
ful if they could pull him through. It appeared that the
boy was a Catholic, and that a priest was sent for, who
administered to him the last rites of the church, which
are only administered when the danger of death is im-
minent. After this the boy was operated upon. The
next morning the police came to the hospital and the
physician said to the boy, who had passed a bad night,
"Tommy I don't think you are going to live much longer.
We want you to tell us the truth, tell us all you know
so we can find out who did this to you, and have them
punished in the proper way." The boy nodded his head
and told his story. It also appeared that shortly after
the operation, the boy twice asked his father if in case
of his death, the father would take him to the country
and bury him; the father said he would. In the face of
this testimony we do not see that it can be reasonably
doubted, that the boy told his story under the impression
that his death was near at hand. As a matter of fact
he died within two hours thereafter. We cannot there-
fore say there was error in admitting the statement.
Nor, do we see any merit in the assignment of error
which suggests that the ingredients necessary to consti-
tute murder in the first degree were not shown. It ap-
peared that the boy was first assaulted, and then was bru-
tally shot in a vital part of the body. The pistol being
held so close as to singe and blacken the flesh. From the
facts attending the shooting, which were shown, the jury
could reasonably infer the existence of an intention to
kill. Taking into account the part of the body in which
the boy was shot, it is to be presumed that whoever fired
the shot knew that it was likely to be fatal. No ex-
tenuating circumstances whatever were shown. We re-
gard the evidence as sufficient to warrant the inference
of a deliberate and wilful intent to take life. Our ex-

amination of the record has satisfied us that the defendant received a fair and impartial trial, and we have no reason to doubt the justice of his conviction. Neither in the charge to the jury nor in the admission of evidence, do we find anything of which the defendant can justly complain.

The assignments of error are overruled, and the judgment is affirmed, and it is ordered that the record be remitted to the court below, for the purpose of execution.