# Commonwealth *v.* Lockett, Appellant.

*Criminal law—Murder—Evidence—Dying declarations.*

1. Dying declarations are inadmissible in a murder case, unless, at the time the declarant made them, he was in actual danger of

death, and believed death was impending and not distant, and unless death actually ensued.

2. In passing on the admissibility of such declarations, the nature of the victim's injuries must be considered, his physical condition, resulting from the injuries, and what was said to and by him.

3. If the declarant had hope of recovery, although his physician expressed none, his statement would not be competent; and, on the contrary, if he believed he was about to die, his statement would be competent, although his physician held out hope that he might recover.

4. Where the declarant had not the slightest hope of recovery, the fact that he lived ten days after making the declarations, is of no significance.

*Criminal law—Murder—Commission of assault by deceased—Defenses—Affirmative defense.*

5. The commission of an assault is no excuse for murder, and it is not sufficient to raise a doubt as to whether a defendant acted in self-defense; for, being an affirmative defense, it must be established by the weight of the evidence.

*Criminal law—Murder—Points—Charge—Calling error to attention of judge.*

6. Where requests for charge have been sufficiently answered in the general charge, a repetition of the instructions is not necessary.

7. If error is made by the trial judge in commenting on evidence, his attention should be called to it at the time.

*Criminal law—Murder—New trial—Discretion of court.*

8. The refusal of a new trial is a matter for the discretion of the trial court.

*Criminal law—Murder—Killing of policeman.*

9. The deliberate murder of a peace officer, while in the performance of his duty, is an offense of the gravest character.

Argued October 6, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 269, Jan. T., 1927, by defendant, from judgment of O. & T. Phila. Co., Dec. T., 1926, No. 1114, on verdict of murder of first degree, in case of Commonwealth v. Frank Edward Lockett. Affirmed.

Indictment for murder.   Before McDevitt, J.

The opinion of the Supreme Court states the facts.

Verdict, guilty of murder of first degree, with penalty of death, on which sentence was passed.   Defendant appealed.

*Errors assigned* were various rulings and instructions, quoting record.

*Henry P. Cheatham,* with him *Robert N. C. Nix,* for appellant.—An alleged dying declaration is not admissible in evidence when both the preliminary examination and the declaration itself fail to show, by words, acts or surrounding circumstances, that declarant believed dissolution was imminent and certain and when it is not shown that the nature of the wound warranted such belief be imputed to him: Com. v. Bednorciki, 264 Pa. 124; Railing v. Com., 110 Pa. 100.

*Charles F. Kelley,* Assistant District Attorney, with *Charles Edwin Fox,* District Attorney, for appellee. —The sense of impending death may be inferred from the nature of the wound, without any express declaration to show that deceased was sensible of impending death: Com. v. Puntario, 271 Pa. 501, 505; Com. v. Barille, 270 Pa. 388; Com. v. Abel, 245 Pa. 220; Com. v. DeLeo, 242 Pa. 510.

OPINION BY MR. JUSTICE WALLING, November 28, 1927:

On December 11, 1926, at about 2:15 a. m., Joseph E. Bell, a police officer in uniform and on duty, was shot and mortally wounded with a .32 caliber revolver in the hands of Frank Edward Lockett, the defendant, from which wound the officer died some days later.   For this the defendant was convicted by a jury of murder of the first degree with the penalty of death, and from the judgment pronounced thereon he brought this appeal.

An examination of the record fails to disclose any reversible error.

The evidence for the Commonwealth was to the effect that at the time above stated the defendant rang the front door bell of house No. 2126 Lombard Street, Philadelphia, and enquired of a woman who came to an upper window if a certain girl was there, to which he received a negative answer. Officer Bell, passing by on his beat and hearing the bell and the conversation, told defendant he should not be around at that hour of the night disturbing people and, as they walked away a few steps, defendant drew a revolver and shot the officer in the abdomen, the bullet entering near the navel and passing backward and downward. Defendant immediately ran, threw away his cap and the revolver and when arrested shortly thereafter had on a different overcoat and another cap. At first he denied doing the shooting, also denied ownership of the cap and revolver; but some days later, when taken before a magistrate, admitted the shooting and identified the revolver and cap. His defense, supported by his testimony only, was that the officer forcibly took defendant's revolver and shoving it against him threatened his life and for fear of being killed he struggled with the officer for possession of the weapon, during which it was accidentally discharged with the result above stated.

Two days after the shooting Magistrate O'Brien went to the hospital and took the officer's affidavit as to the occurrence in the form of an ante-mortem statement. The admission of this as a dying declaration is the alleged error largely relied upon by appellant. The wisdom of the rule admitting such statements as evidence is well illustrated in the instant case, otherwise, as only the two principals were present, there might have been a miscarriage of justice. Such statement, however, is competent only when the declarant is under a solemn sense of a speedily approaching dissolution, without hope of recovery. This grave situation supplies

the place of an oath taken in open court, although the statement so given is not considered the equivalent of sworn testimony, as the declarant is not brought face to face with the accused and the opportunity to cross-examine is lacking.  Whether the surroundings in any case warrant the admission of such statement is for the court, but, when admitted, its weight is for the jury under proper instructions.  The admissibility of such declaration depends primarily upon the state of the declarant's mind.  As stated by Mr. Justice STRONG, speaking for the court, in Kilpatrick v. The Commonwealth, 31 Pa. 198, 215: "Undoubtedly, such declarations [dying declarations] are inadmissible unless at the time the declarant made them he was in actual danger of death; unless he believed death was impending, not distant; and unless death actually ensued.  All these requisites seem to have existed in the present case. The only possible question is, whether the admitted declarations were made under a sense of impending death.  It is not necessary that they should be stated at the time to be so made...... It is enough, if it satisfactorily appears, in any mode, that they were made under that sanction; whether it be directly proved, by the express language of the declarant, or be inferred from his evident danger, or the opinions of the medical or other attendants stated to him, or from his conduct, or other circumstances of the case, all of which are resorted to in order to ascertain the state of the declarant's mind."  In passing upon the admissibility of such statement the nature of the victim's injuries must be considered; in the instant case such a bullet wound as is generally considered mortal, although not causing immediate death; also the declarant's physical condition, resulting from the injuries, and what was said to and by him: Com. v. Puntario, 271 Pa. 50; Com. v. Barette, 270 Pa. 388; Com. v. Abel, 245 Pa. 220; Sullivan v. Com., 93 Pa. 284; Kehoe v. Com., 85 Pa. 127, 136; Wigmore on Evidence (2d ed.), vol. 3, sec. 1442.

If the declarant had hope of recovery, although his physician expressed none, his statement would not be competent. On the contrary, if he believed he was about to die his statement would be competent, although his physician held out hope that he might recover: Com. v. Latampa, 226 Pa. 23. In the case in hand the physician told the officer he would probably die as the result of his injuries and the evidence indicates he fully realized the seriousness of his condition and that he was about to die. In fact his signed statement sets out that he was about to die and that he made it as a dying declaration. There is nothing in the record to indicate that the officer had the slightest hope of recovery or that he would live any appreciable length of time. That being so, the fact that he lingered for ten days thereafter is of no significance: Roscoe's Criminal Ev. (8th ed.), vol. 1, page 61 (star page 37); Wharton's Criminal Ev. (8th ed.), sec. 283. There is no doubt the officer believed he was about to die when he made the statement and, as death did result from his injuries, it was competent. The statement was to the effect that the officer never laid a hand upon the defendant or threatened him and that the shooting was wilful and without palliation.

As above stated the only defense interposed was that the shooting was accidental. Upon that branch of the case the trial judge instructed the jury: "The defense in this case is that of an accident. The defendant, in his testimony, stated that as the officer and he struggled for the gun he took it from the grasp of the officer. And when a plea of that kind is entered, the defendant challenges and controverts the charges, and may show that the killing was accidental, and if the testimony satisfies the jury that the killing was the result of accident, the jury should acquit the defendant. Accidental killing is not such a defense as throws on the accused the burden of proving it by a preponderance of evidence. It still remains the duty of the Commonwealth to prove that the killing, though done with a deadly weapon, was

intentional or wilful.   When the evidence, taken as a
whole, raises a reasonable doubt in the jury's mind as
to whether the killing was accidental or intentional,
that doubt must be resolved in favor of the defendant."
This put the defense in the most favorable possible light
and rendered categorical answers to defendant's fourth
and eighth requests unnecessary.   Furthermore, those
requests seem to have been based on the theory of self-
defense, of which there was no claim, and neither ac-
curately states the law on that subject.   With reference
thereto, it is sufficient to say that the commission of an
assault is no excuse for murder and it is not sufficient
to raise a doubt as to whether a defendant acted in self-
defense; for, being an affirmative defense, it must be
established by the weight of the evidence.   If these re-
quests were intended to refer to the theory of an acci-
dent, they had been sufficiently answered in the general
charge and a repetition was not necessary:  Com. v.
Lewis, 222 Pa. 302;  Miller v. Smith Woolen Machine
Co., 220 Pa. 181;  Creachen v. Carpet Co., 214 Pa. 15;
Fleming v. Dixon, 194 Pa. 67;  Com. v. Hand, 59 Pa.
Superior Ct. 286.

It cannot be said that the charge when considered as
a whole was prejudicial to the defendant.   If an error
was made in commenting upon the defendant's testi-
mony, as to where he carried the revolver, the attention
of the trial judge should have been called to it at the
time and, as it was not, it is now too late:  Com. v. Raz-
mus, 210 Pa. 609;  Com. v. Delfino, 259 Pa. 272, 280;
Com. v. Wasson, 42 Pa. Superior Ct. 38.   The refusal of
a new trial was a matter for the discretion of the trial
court.

We have examined the record, as is our duty under
the Act of February 15, 1870, P. L. 15, to see if the ele-
ments of first degree murder were present and find they
were, under the Commonwealth's evidence.   This feature
of the case is practically identical with that of Com-
monwealth v. Scott, 284 Pa. 159, and what is there said

Opinion of the Court.                    [291 Pa.

applies equally here.  See also Com. v. Miller, 258 Pa. 226.  The deliberate murder of a peace officer, while in the performance of his duty, is an offense of the gravest character.

The judgment is affirmed and the record is ordered remitted for the purpose of execution.