## Commonwealth *v.* Weinstein, Appellant.

238

Argued September 30, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*William T. Connor*, with him *John R. K. Scott* and *Hardie Scott*, for appellant.

*Charles C. Gordon*, Assistant District Attorney, with him *Charles F. Kelley*, District Attorney, for appellee.

OPINION BY KELLER, P. J., November 22, 1938:

The appellant, Weinstein, was tried with one Polnsky on two indictments, one of which, in three counts, charged the defendants jointly with having, on August 26, 1934, feloniously (1) set fire to and burned a certain building and restaurant at the northwest corner of 10th and Race Streets, Philadelphia; (2) caused said building and restaurant to be burned; (3) aided, counseled and procured the burning of said building and restaurant; contrary to the Act of April 25, 1929, P. L. 767, as amended by Act of June 12, 1931, P. L. 541; the other of which, in two counts, charged the defendants jointly with divers unknown persons, (1) with having conspired to feloniously set fire to and burn said building and restaurant, etc., all to the damage of Max Kane, the owner thereof; and (2) with having conspired by means of setting fire to and burning certain goods, chattels and personal property therein belonging to said Weinstein, and insured by various named insurance companies, to defraud said insurance companies of the amount of said insurance.

The bills were tried together and resulted in general verdicts of guilty as to both defendants on both bills. Each of the defendants was sentenced on both indictments, the sentence on the conspiracy charge, No. 791, to begin at the expiration of the sentence for setting fire to the building, No. 790. Weinstein alone appealed.

The Commonwealth's case depended largely on the testimony of Morris Rosenberg, a self-confessed 'firebug' or incendiary, who is serving a sentence of ten to twenty years in the Eastern State Penitentiary on a plea of guilty to a different charge of arson. His testimony was that he had been employed by Weinstein to fire the building, occupied by Weinstein as a restaurant, and that he had done so, and had been paid the amount agreed upon by Weinstein after he had collected the insurance; and that Polnsky, a friend of his, had been

employed by him to "make and carry the package," that is, to get and take a five gallon can of gasoline and a quantity of inflammable material to the building to be set on fire. The character of the fire and the blast or explosion which accompanied it, left little doubt that it was of incendiary origin.

Seven assignments of error have been filed, which are grouped under four heads in the statement of questions involved. We will consider the questions in the order presented by the appellant.

(1) No error was committed in admitting the testimony of Rosenberg that Polnsky had "carried the package" for him at other fires set by him. It was limited by the court, and the district attorney, to Polnsky, who was a co-defendant, and its purpose was to show a course of conduct between Rosenberg and Polnsky, and the guilty knowledge and intent of the latter. Its admission was warranted by the decisions of the Supreme Court and this court in *Goersen v. Com.*, 99 Pa. 388, 398, 399; *Com. v. Bell*, 288 Pa. 29, 34, 135 A. 645, affirming 88 Pa. Superior Ct. 216, 223; *Com. v. Chalfa*, 313 Pa. 175, 178, 169 A. 564; *Com. v. Rabinowitz*, 73 Pa. Superior Ct. 221, 226, 227; *Com. v. Flick*, 97 Pa. Superior Ct. 169, 174, 175; *Com. v. Huster*, 118 Pa. Superior Ct. 24, 31, 178 A. 535.

(2) The brief reference to this testimony in the charge (97a-98a), complained of by appellant, was made while discussing Polnsky's connection with the crime: "Samuel Polnsky, the other defendant, whom Rosenberg identified as the man who on other occasions carried the various apparatus necessary to be used in setting fire to these places, testified he had known Rosenberg for fifteen years, but had never carried any apparatus for Rosenberg to set fire to any place; that he had moved Rosenberg's personal belongings from place to place on several occasions and the last time was eight years ago; that he never carried or delivered any carton

containing gasoline and papers; that he never had anything to do with Weinstein, and, Weinstein testified he never had anything to do with Polnsky." In view of the statement of the court, when the testimony was received, limiting the purpose of its admission, we are not satisfied that there was any error in this part of the charge. It emphasized Polnsky's denial that he had ever "carried the package" for Rosenberg and his assertion that he had never had anything to do with Weinstein, and Weinstein's denial that he had ever had anything to do with Polnsky; and it followed immediately after that portion of the charge where the court referred in the strongest possible manner to Weinstein's denial of any knowledge of or dealing with Rosenberg: "Weinstein, the defendant, testified that everything Rosenberg has said is a lie; that he never in his life saw Rosenberg until the time he was confronted with him at the Magistrate's hearing, a year or more after the fire took place; that he never asked Rosenberg to set fire to his place, never paid Rosenberg $200, never had been down to this place on Market Street where Rosenberg said he worked, never spoke to him at any time and denies any knowledge of anything concerning the fire or anything concerning Rosenberg."

(3) Appellant's chief argument was directed against the admission in evidence of certain testimony of C. Thomas McNitt, who at the time of the fire was assistant fire marshal of the City of Philadelphia, in charge of arson investigation. He had investigated the fire shortly after its occurrence, but had been able to get no evidence of who set it on fire until the following year, when Rosenberg, having been sent to prison on another charge of arson, had told of his connection with this fire. He interviewed Rosenberg and obtained from him a written statement. He then had an interview with Weinstein, which he described as follows, and which the appellant assigns as error: "It was on Oc-

tober 31st that he was brought to the office, 1935, and I asked him if he was the Weinstein that had the fire at the northwest corner of Tenth and Race on August 26, 1934. He said he was. I asked him if he would tell me how the fire started. He said he did not know. I asked him if he knew Morris Rosenberg. He said no, he did not know him and never heard of him. I asked him if it wasn't a fact that he paid Morris Rosenberg $200 to set the store on fire. He said he didn't know him. I asked him where he was on this particular night and he said, 'I was feeling sick and went to a doctor and got a prescription and went to Blackwood, New Jersey; a friend of mine by the name of King ran a hotel.' I asked him if he was there before in his life. He said no, that was the first and last time he went to Blackwood. I then showed him the statement that Rosenberg had given. Q. What did you say to him? A. I told him that the same admission [that is, statement] that he just made to me was part and parcel of this confession or statement made by Rosenberg—'so if you say you never knew Rosenberg how would Rosenberg know you went to a doctor, got a prescription and went to a Mr. King's place in Blackwood?' He couldn't answer that." In commenting on this the court said to the jury: "You have heard the testimony of Mr. McNitt, who is now out of the fire department and in some other business in New York, concerning Rosenberg's conversation with him and what Rosenberg told him about Weinstein taking a trip to Blackwood, New Jersey. There is no doubt that Weinstein did go to Blackwood, according to his own testimony and that of his friend Mr. King...... Here you have a case where the question of the veracity of witnesses is very much in issue and it is for you to determine who is telling the truth. When Weinstein was asked [on the trial] how Rosenberg would know these things about the trip to Blackwood and the prescription

of the doctor he said he never had a doctor's prescription and did not know how Rosenberg would know that he had gone to Blackwood." The court was evidently referring to McNitt's conversation with Weinstein, as above recited, in which he directed the latter's attention to the fact that in the written statement of Rosenberg, which he had just showed and read to Weinstein, Rosenberg,—who, Weinstein testified, was a total stranger to him, whom he had never seen or talked to—, had given full details of the trip to Blackwood, New Jersey, which Weinstein had taken the night of the fire, to the hotel of his friend, King; and asked him (Weinstein) how Rosenberg knew these facts if he and Weinstein were total strangers? To which, Weinstein could give no explanation. McNitt was testifying to a conversation between him and the defendant, Weinstein. If it did not occur, Weinstein could deny it. If it did occur, and Weinstein had any explanation to give of the peculiar circumstance to which McNitt had directed his attention, he could give it. If he had no explanation, the jury were entitled to know that. But McNitt had a right to tell of the conversation between them at their interview and to mention that he had drawn Weinstein's attention to the fact that Rosenberg, whom Weinstein had just told him he had never seen or talked to, had recited in his written statement the details concerning Weinstein's trip to Blackwood, New Jersey, the night of the fire; which might be considered as bearing on the truthfulness of his testimony denying any acquaintanceship with Rosenberg.

This testimony bears no resemblance to cases where accusations of guilt were made in the presence and hearing of the defendant and (1) were not denied by the defendant, or (2) were met by a prompt denial. McNitt did not accuse Weinstein of firing the building. He asked him about the fire and where he was the night of the fire, and when Weinstein had denied any knowl-

edge of or complicity in the fire, and had denied any acquaintanceship or meeting with Rosenberg, and had given in detail the particulars of his journey to Blackwood, New Jersey, the night before the fire, he, (McNitt), called his attention to the copy of Rosenberg's statement, made some time before, which Weinstein had before him and asked what explanation he had to give how Rosenberg, this alleged total stranger whom Weinstein had never met, had known and recounted the very details of Weinstein's trip to Blackwood, which he had just finished telling McNitt. The testimony was not presented as being any acknowledgment of guilt by Weinstein. It was presented as showing an apparent flaw or defect in his statement that he had never seen or met Rosenberg, which was called to his attention at once and opportunity given him to explain it. We find no error in the admission of this evidence or in the court's reference to it in its charge.

(4) No error was committed by the court below in not reading to the jury and affirming the defendant's first, second and third points for charge. All of them were fully, adequately and correctly covered by the court in its general charge and there was no necessity for repeating them: *Com. v. Danz,* 211 Pa. 507, 521, 522, 60 A. 1070; *Com. v. Duca,* 312 Pa. 101, 113, 165 A. 825; *Com. v. Weston,* 297 Pa. 382, 387, 147 A. 79; *Com. v. Lockett,* 291 Pa. 319, 325, 139 A. 836; *Com. v. Lewis,* 222 Pa. 302, 304, 71 A. 18.

The assignments of error are overruled and the judgments are affirmed, and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentences or any part of them which had not been performed at the time the appeals were made a supersedeas.