Commonwealth *v.* Smith, Appellant.

Argued January 11, 1973. Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

516

reargument refused February 11, 1974.

*William J. Brady, Jr.,* with him *Jerry Brodsky,* for appellant.

*Maxine J. Stotland,* Assistant District Attorney, with her *James T. Ranney* and *Milton M. Stein,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE NIX, November 26, 1973:

Appellant was tried by a judge and jury on several charges growing out of the stabbing death of Dr. Oliver Wilson, and he was convicted of voluntary manslaughter, carrying a concealed deadly weapon, aggravated robbery, and burglary. Post-trial motions were denied, sentences were imposed on each conviction, and this appeal followed.[1]

The Commonwealth produced evidence that on September 26, 1969 Dr. Wilson was assaulted and robbed by a man professing to be looking at an apartment which Dr. Wilson was offering for rent. After the assault, Dr. Wilson was able to drive to St. Joseph's Hospital where he underwent surgery. Following that

---

[1] Appeals on the non-homicide charges were taken to the Superior Court and certified to this Court.

surgery, Dr. Wilson was conscious and lucid, but he eventually succumbed to the effect of the knife wounds on October 5, 1969.

In order to prove that appellant was the assailant, the Commonwealth produced Detective Lauer who interviewed the deceased after the incident. Detective Lauer testified that the deceased described his assailant as a Black male, age 35, 5'8" to 5'10", weighing 160-170 pounds with black unprocessed hair and a heavy mustache. Detective Lauer then returned to the scene of the incident where he found, among other things, a brown wallet containing appellant's photograph as well as numerous cards bearing appellant's name and signature. Appellant's objections center upon the following testimony of Detective Lauer: "As a result of finding the wallet at 2405 College Avenue, with the information contained therein, I got together a group of nine photographs and I informed the doctor that I had some photographs that I wished him to look at and I assisted the doctor in putting on his glasses so he could view these photographs. These were the same glasses that were taken from the hallway at 2405 College Avenue. He then took possession of the group of photographs. He took his time. He looked at each photograph and he went through this packet of photographs one time completely. He then started over again and when he came to the photograph of Orlandus Smith, he stated, 'This looks like the man.' He made a comment about the hairline which appeared in this photograph and he stated the hair was longer than it appeared in the photograph and it was not processed. He also stated the mustache appeared in the photograph lighter than it is now, and that he would have to see the man in person to be sure if that was the same man that had robbed him."

Appellant first objects to the admission of the deceased's tentative identification under the dying declaration exception to the hearsay rule. The reliability

of a dying declaration is provided not by an oath, nor by cross-examination; rather, its admissibility is based on the premise that no one "who is immediately going into the presence of his Maker will do so with a lie upon his lips." LUSH, L. J., *Regina v. Osman,* 15 Cox C.C. 1, 3 (Eng. 1881). Consistent with that premise, we have stated that: ". . . before declarations of a deceased may be admitted as dying declarations, the evidence must, inter alia, justify the conclusion that at the time the statements were made, the declarant believed he was in fact dying, and also that death was imminent. In other words, the admissibility of such evidence depends primarily upon the state of the declarant's mind. Commonwealth v. Knable, 369 Pa. 171, 85 A. 2d 114 (1952); Commonwealth v. Lockett, 291 Pa. 319, 139 A. 836 (1927); and Commonwealth v. De-Leo, 242 Pa. 510, 89 A. 584 (1914). However, the required sense of imminent death may be inferred from the existing circumstances including the nature of the wound and state of the declarant's illness. Commonwealth v. Edwards, 431 Pa. 44, 244 A. 2d 683 (1968), and Commonwealth v. Plubell, 367 Pa. 452, 80 A. 2d 825 (1951)." *Commonwealth v. Speller,* 445 Pa. 32, 34-35, 282 A. 2d 26 (1971). The record in this case includes the following strong evidence that Dr. Wilson knew that his life was in serious danger at the time he made the challenged identification: (1) The deceased was a physician and could appreciate the gravity of the procedures resorted to by the attending physicians; (2) The deceased expressed repeated concern to his wife about the amount of blood he had lost; (3) The deceased's wife detected that her husband's attitude was much less sanguine than it had been after a serious operation he had undergone some ten years prior to this incident; (4) The deceased told his wife that he had been severely butchered; (5) The deceased told Detective Lauer that "he did not think he would make it."

In addition we must consider all of the attendant circumstances of this incident including the weapon which wounded him (a large-bladed knife), the nature and extent of his injuries (several wounds in the abdomen and arm), and his physical condition (Dr. Wilson was 66 years of age). *See, Commonwealth v. Hawkins,* 448 Pa. 206, 217, 292 A. 2d 302 (1972). It is not significant that the deceased lingered for several days, so long as the requisites for a dying declaration set forth above are satisfied. *See, Commonwealth v. Hawkins, supra; Commonwealth v. Lockett,* 291 Pa. 319, 139 A. 836 (1927). Taking all of the factors mentioned above into account, we are convinced that Dr. Wilson perceived his condition as sufficiently grave to warrant characterizing his statements at the photographic line-up as dying declarations.

Appellant also urges that the exhibition of photographs to the victim in this case was Constitutionally infirm. We disagree. The appellant was not in custody at the time of this photographic line-up, and therefore he was not entitled to counsel at the line-up under our decision in *Commonwealth v. Whiting,* 439 Pa. 205, 266 A. 2d 738 (1970), cert. denied, 400 U.S. 919 (1970). Nor are we prepared to hold that the procedure in this case was so unnecessarily suggestive and conducive to irreparable mistaken identity as to deny appellant due process of law. *See, Stovall v. Denno,* 388 U.S. 293 (1967); *Commonwealth v. Wilson,* 450 Pa. 296, 300, 301 A. 2d 823 (1973); *Commonwealth v. Williams,* 440 Pa. 400, 404, 270 A. 2d 226, 228 (1970). Here, the detective showed the victim nine photographs and the record is barren of any indication that there were any improperly suggestive procedures used in that identification.

In addition, appellant contends that the mention of these photographs was prejudicial in that the jury would thereby infer that he had had previous criminal

involvement. We disagree. Unlike the record in *Commonwealth v. Allen*, 448 Pa. 177, 292 A. 2d 373 (1972), there is nothing about these photographs that could reasonably cause the jury to draw such an inference. The detective's statement that he "got together a group of nine photographs" was completely innocent, particularly in the context of this case where the detective had just found the wallet of the accused. A more likely inference would be that the detective obtained the picture of appellant from the wallet that was recovered. Nowhere in his direct testimony did the detective refer to this photograph as a "mugshot" or even a "photograph from police files", and we must conclude that no juror would reasonably infer prior criminal activity under these circumstances.

Finally, appellant objects to testimony by Detective Lauer that appellant's wallet contained "a card with a partial prescription with the name of Dr. Cromer on it, with a narcotics registration." Since all prescriptions containing potentially addictive substances contain such a number, we cannot accept appellant's contention that the above testimony branded him as a narcotics user. In fact, the reverse is true—the testimony indicates that the prescription involved was obtained through legal channels.

The judgment of sentence is affirmed.

Mr. Justice MANDERINO concurs in the result.