## Commonwealth *v.* Reidenbaugh, Appellant.

Submitted April 18, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*John J. Dean,* Chief, Appellate Division, and *Ralph J. Cappy,* Public Defender, for appellant.

*Robert L. Eberhardt* and *Robert L. Campbell,* Assistant District Attorneys, *John M. Tighe,* First Assistant District Attorney, and *John J. Hickton,* District Attorney, for Commonwealth, appellee.

OPINION BY PRICE, J., December 22, 1975:

Appellant, Charles Edward Reidenbaugh, was convicted by a jury of rape,[1] statutory rape,[2] sodomy,[3] corrupting the morals of a minor,[4] and assault and battery with intent to ravish.[5]

The convictions arose from an incident which occurred in the early morning hours of May 27, 1973. At that time, two young girls, Janet Mills and Elizabeth Kephart, were near West View Park, in the County of Allegheny attempting to contact a cab to take them home. Several men, among them the appellant, approached the girls and offered them a ride home. However, once the girls were in the car, the men drove to a bar in McKees Rocks. There, the girls refused to drink alcoholic beverages, and pro-

---

1. Act of June 24, 1939, P.L. 872, §721 (18 P.S. §4721).
2. *Id.*
3. *Id.* §501 (18 P.S. §4501).
4. *Id.* §532 (18 P.S. §4532).
5. *Id.* §722 (18 P.S. §4722).

tested the delay. Despite their requests to be taken home, however, the appellant and three male companions took the girls to another bar and then to Hardies Lake.

At the lake, appellant told his passengers that they would have to get out of the car as it was "stuck in the mud." (NT 30)

Miss Kephart did not want to leave the car, but was forcibly pulled out the door by the appellant and his brother. After she was outside, appellant hit her in the jaw, ripped off her dress, threw her on the ground and raped her. Appellant then threatened to kill the victim and her friend if they did not do as they were told.

Miss Kephart tried to rise, but was thrown back to the ground by appellant, who watched as the other men also raped her. Appellant then forced Miss Mills to commit sodomy upon him "to show [Miss Kephart] how to do it." (NT 48) He then slapped Miss Kephart and forced her to commit sodomy upon him. Afterwards, the girls were taken home.

Appellant raises four allegations of error, which will be considered seriatim. First, he contends that the trial court erred in permitting the investigating police officer to testify that both victims had identified the appellant from photographs. Appellant alleges that this testimony led the jury to conclude that he had a prior criminal record.

The Supreme Court has stated the standard which governs a review of the testimony related to a photographic display in *Commonwealth v. Allen,* 448 Pa. 177, 181, 292 A.2d 373, 375 (1972) : "The suggestion that any reference to a defendant's photograph is so prejudicial that an inflexible rule of reversal must apply is explicitly rejected. We hold that after the reference to a photograph the controlling question is whether or not a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity. A mere passing reference to photographs from which a reasonable inference of prior criminal activity cannot properly be

18

drawn does not invalidate the proceedings since there has been no prejudice as a result of the reference; so too, where it appears on the face of the record that there is an explanation of the police possession of the photograph unrelated to any inference of prior criminal activity. Thus, testimony suggesting that the photograph was secured from a school yearbook or from the possession of acquaintances of the defendant illustrates situations where the suspect is not prejudiced by the photographic reference."

In the instant case, the police officer testified that he showed Miss Kephart fourteen photographs, from which she identified the appellant. We find nothing in this testimony could be construed as giving rise to an inference of prior criminal activity. The only other reference made to the photographs was during cross-examination when the following transpired:

"BY MR. LUDWIG [Counsel for a co-defendant]:

Q. Lt. Klein, would you say it is quite dark under that bridge at night?

A. Yes, sir, I would.

Q. Or at 1 o'clock in the morning?

A. Yes, sir.

Q. On the morning of the 27th, the day of the morning in question, do you know whether there was a moon?

A. No, I don't. I was working daylight.

Q. *Now you identified Charles Reidenbaugh by showing Elizabeth mug shots, correct.*

A. *No. I showed her pictures, fourteen different pictures.*

Q. Of different people?

A. Yes, sir.

Q. One of them was Charles Reidenbaugh, is that right?

A. Yes, sir." (Emphasis added) (NT 169)

As can be seen, the policeman distinctly refuted the suggestion that he displayed "mug shots" to Miss Kep-

hart. Consequently, we can find no prejudicial error in the lower court's refusal to declare a mistrial on this basis. *Commonwealth v. Smith*, 454 Pa. 515, 314 A.2d 224 (1973).

Appellant next contends that the lower court committed reversible error in permitting rebuttal evidence of Miss Kephart's repute[6] in the community, asserting that none of the witnesses called for this purpose were qualified to testify to her reputation for chastity. Her repute became an issue at trial when appellant introduced testimony that her reputation for chastity was not good. To refute that impression, the Commonwealth called three witnesses who knew the girl.

The first witness called had lived in the community for 28 years and had known the girl since her birth. He stated that he had "never heard anything against her reputation" (NT 471), but that he did not know her reputation for chastity. The second witness lived in the community where Miss Kephart had lived for the first nine or ten of her thirteen years. She stated that the victim "has always been a very good girl" (NT 476), that she had "never been wild" (NT 477), and that she had never heard anyone say that Miss Kephart was promiscuous.

The final witness was the nurse at the school Miss Kephart attended at the time of the incident. She testified that she has known the victim for the last three years and that she knows other children who know her. She testified that Miss Kephart has the reputation of a "fine girl." (NT 490)

---

6. "Repute" is the reputation of a person for chastity in the community in which she resides at or about the time of the commission of the offense charged. *Commonwealth v. Bonomo*, 187 Pa. Superior Ct. 521, 144 A.2d 752, *aff'd* 396 Pa. 222, 151 A.2d 441 (1959). The definition of community and time depend largely on the circumstances of each case, and the trial judge's decision to admit such testimony is within his discretion. It will not be reversed in the absence of an abuse of discretion. *Commonwealth v. Bonomo, supra.*

The testimony of the rebuttal witnesses was properly qualified and correctly permitted. The weight to be accorded that testimony was for the jury. *Commonwealth v. Horn*, 395 Pa. 585, 150 A.2d 872 (1959). We find no error in its admission into evidence.

Appellant next contends that the evidence was insufficient to support his conviction of statutory rape. There is no merit to this contention.

The elements of the offense of statutory rape are set forth in the Act of June 24, 1939, P.L. 872, §721 (18 P.S. §4721):

"... [w]hoever, being of the age of sixteen (16) years and upwards, unlawfully and carnally knows and abuses any woman child under the age of sixteen (16) years with her consent, is guilty of statutory rape. ..."

Miss Kephart's age was established as thirteen years at the time of the offense and appellant's as twenty-six. Trial testimony further established that appellant forcibly engaged in sexual intercourse with the victim and threatened her life if she did not do as he instructed her. All the elements of the offense were established by competent evidence which was credited by the jury. The evidence was sufficient in law to prove beyond a reasonable doubt that the appellant was guilty of the crime charged. *Commonwealth v. Porter*, 229 Pa. Superior Ct. 314, 323 A.2d 128 (1974).

Finally, appellant asserts that he was subjected to double punishment when he was sentenced on every count of the indictment. He contends that the doctrine of merger should preclude sentencing on the convictions of corrupting the morals of a minor and aggravated assault with intent to ravish. We are unable to consider the merits of his argument, however, because appellant did not raise the merger doctrine in any proceeding in the lower court. *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974). *See* Pa.R.Crim.P. 1123; *Commonwealth v. Tis-*

*dale,* 233 Pa. Superior Ct. 77, 80-81, 334 A.2d 722, 723-724 (1975) ; *Commonwealth v. Rispo,* 222 Pa. Superior Ct. 309, 294 A.2d 792, allocatur refused, 222 Pa. Superior Ct. *xxxii* (1972).

Judgment of sentence affirmed.

---

CONCURRING AND DISSENTING OPINION BY HOFFMAN, J.:

I do not agree that appellant has waived his claim of double punishment for the reasons set forth in my Concurring and Dissenting Opinion in *Commonwealth v. Walker,* 234 Pa. Superior Ct. 433, 438, 340 A.2d 858, 860 (1975) ; and, therefore, I would address the merits of appellant's argument.

Appellant contends that because sentence was imposed on the charge of rape,[1] the lower court erred in imposing additional sentences on the charges of assault and battery with intent to ravish[2] and corrupting the morals of a minor.[3] Assault and battery with intent to ravish merges with the charge of rape, *Commonwealth ex rel. Shaddock v. Ashe,* 340 Pa. 286, 17 A.2d 190 (1940), and, therefore, appellant cannot be sentenced on both charges. In *Commonwealth v. Cox,* 209 Pa. Superior Ct. 457, 228 A.2d 30 (1967), we held that if the only acts on which a charge of corrupting could be based were the fornication itself, or acts clearly related to the fornication, then the crime of corrupting merges with the crime of rape. That is the situation in the instant case.

I would remand for resentencing.

---

1. Act of June 24, 1939, P.L. 872, §721; as amended, May 12, 1966, P.L. 84, §1; 18 P.S. §4721.

2. Act of June 24, 1939, supra; 18 P.S. §4722.

3. Act of June 24, 1939, supra; added June 3, 1953, P.L. 277, §1, as amended July 25, 1961, P.L. 848, §1; 18 P.S. §4532.