## Coyle *versus* The Commonwealth.

1. Where, upon the trial of an indictment for murder, the fact of the killing by the prisoner is admitted, and insanity is set up as a defence, the burden rests on the prisoner to satisfy the jury that insanity actually existed at the time of the act, and a doubt as to such insanity will not justify the jury in acquitting on that ground. The law presumes sanity when an act is done, and that presumption can only be overthrown by fairly preponderating evidence.

2. Where, in such case, the court instructed the jury as above set forth, except that the court used the expression "*clearly* preponderating evidence" instead of "*fairly* preponderating evidence,"—*Held*, to be error, requiring a reversal.

[Coyle *v.* Commonwealth.]

3. Where, in a murder case, the defence of homicidal mania is set up, it is not improper for the court to instruct the jury (in the language of Gibson, C. J., in Commonwealth *v.* Mosler, 4 Barr, 264), thus: "There may be an unseen ligament pressing on the mind drawing it to consequences which it sees but cannot avoid, and placing it under a coercion, which, while its results are clearly perceived, is incapable of resistance. The doctrine which acknowledges this mania is dangerous in its relations, and can be recognized only in the clearest cases. It ought to be shown to have been habitual, or, at least, to have evinced itself in more than a single instance."

4. An attempt to commit suicide is not, of itself, evidence of the fact of the insanity of the prisoner, and raises no legal presumption thereof, but may be considered by the jury with all the other facts and circumstances bearing on the question of insanity.

5. It is not error for the court, in a murder case, to charge the jury that they are not to be frightened from their duty to render a fair and impartial verdict, by any fear of what the punishment may be in case of conviction.

May 15th 1882. Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

Error to the Court of Oyer and Terminer and General Jail Delivery of *York county :* Of January Term 1882, No. 192.

Indictment of John Coyle, Jr., for murder in the first degree. Upon the prisoner being arraigned and the indictment read to him, and being asked if he was guilty of the felony whereof he stood indicted, he replied "I don't know any thing about it," whereupon the court ordered a plea of not guilty to be entered.

On the trial, before Wickes, P. J., the fact of the killing was not denied, but the prisoner's counsel relied upon the defence of insanity. The uncontradicted evidence was to the following effect :—

The prisoner was a young man of twenty-six years of age, living with his father and mother, on the banks of the Susquehanna river, nearly opposite Marietta in Lancaster county, and an only child. Emily Myers, the deceased, was a hired girl, employed as a domestic by his mother, and living with the family. On the morning of the 30th of May last, at about 5 o'clock, his mother called Emily, who slept in the room with her, to get up and go and milk the cows. Emily got up, dressed herself, and went to the barn to milk. Shortly afterward the mother heard three sounds like striking with an axe on a board. She got up and dressed, and went down stairs and out to the end of the porch nearest the barn, and called Emma. No answer came, and presently John Coyle, Jr., came down stairs and went to the front door at the porch, and said to his mother, that she needn't call Emma, that she was dead, that he had shot her, and shot himself, and was going to die. Mrs. Coyle then called her husband and told him what John said he had done.

[Coyle v. Commonwealth.]

John then told his mother that Emily "had ruined him and set him crazy : that he went to the stable that morning to see if she was going to be as good as her word, that she had promised to marry him three times and went back on him, and when he went out to the stable, he asked her if she was going to be as good as her word. She said, 'No, I won't have you nor any other man.' Then he said, 'I'll shoot you, for no other man shall have you;' and she dared him to do so, and she threw herself back, and said, 'Shoot me right here, shoot me quick,' and he shot her and shot himself twice. He said he intended to die by the side of her. He said I needn't call her, for she was dead."

The body of the deceased was found in the stable. The prisoner had shot himself twice and he expressed regret that he had not succeeded in "finishing the job."

There was much evidence given on behalf of the prisoner with the view of showing that he was insane at and before the time of the killing.

The defendant presented, inter alia, the following point :

3. That if upon all the evidence in the case the jury have a reasonable doubt as to the prisoner being of sound mind at the moment when he shot the deceased, they are bound by the law to acquit him.

Answer. We answer the prisoner's third point as follows : The law of the state is, that when the killing is admitted and insanity or want of legal responsibility is alleged as an excuse, it is the duty of the defendant to satisfy the jury that insanity actually existed at the time of the act, and a doubt as to such insanity will not justify the jury in acquitting upon that ground. The law presumes sanity when an act is done, and that presumption can only be overthrown by clearly preponderating evidence. This point is refused.

The court charged the jury, inter alia, as follows :

[But there is another kind of insanity to which allusion has only very briefly been made, namely, homicide insanity, which consists of an irresistible inclination to kill, or to commit some other particular offense. Said Chief Justice GIBSON, in the case already cited, "there may be an unseen ligament pressing on the mind, drawing it to consequences which it sees but cannot avoid, and placing it under a coercion, which while its results are clearly perceived is incapable of resistance. The doctrine which acknowledges this mania is dangerous in its relations and can be recognized only in the clearest cases. It ought to be shown to have been habitual or at least to have evinced itself in more than a single instance."] (First assignment of error.) . . . . When homicidal insanity is the prisoner's plea, he should establish by clear evidence an irresistible inclination to kill, and that he was

utterly unable to control his will, or subjugate his intellect, and that he was not actuated by anger, jealousy, revenge and kindred evil passions. . . .

Let us inquire now into the measure of proof necessary to establish insanity, when it is alleged as a defence. In the first place I observe insanity is never presumed—the law presumes sanity as the normal condition of a man, and when the killing is admitted as in this case, the prisoner must satisfy the jury that insanity existed when he did the act, and if the evidence leaves the mind of the jury in doubt as to the insanity, it will not justify an acquittal. The proof therefore must be satisfactory—it must be clear. The supreme court has approved the following expressions as to the measure of proof : In Ortwein *v.* Commonwealth, 26 P. F. S. 421: " The evidence must be sufficient to fairly and reasonably satisfy you." " It must satisfy you from the preponderance of testimony." " Evidence must fairly convince them." In Lynch *v.* Commonwealth, 27 P. F. S. 207–213 : " The evidence must fairly convince you." " Is the duty of defendant to satisfy the jury that insanity existed." " In Brown *v.* Commonwealth, 28 P. F. S. 123–124 : " To establish this defence (viz.: insanity) it must be clearly proved by satisfactory and clearly preponderating evidence." " The weight of the evidence must preponderate." In Laros *v.* Commonwealth, 3 Norris, page 200 : " Duty of defendant to satisfy the jury that insanity exists." " He must prove to your satisfaction." " It must be clearly proved." See also Pannell *v.* Commonwealth, 5 Nor. 260. The fifteen judges of England informed the House of Lords that the jury " should be told insanity must be clearly proved."

. . . The defence, in support of its theory of mental unsoundness, has produced a number of witnesses who have testified as to the mental condition of the prisoner at various periods of his life. His parents have told us of his childhood and his manhood, of his mental deficiencies when young, and his growing infirmities as he advanced in life. They have, as have the other witnesses produced, given their reasons for the opinions they have expressed—the facts and circumstances upon which they based them. And many of these witnesses have said that from the observations they made of the prisoner—his conversations, conduct and other peculiarities—they believed him of unsound mind.

[The defence further points to his secret vice and his dissipated habits as having, in a measure at least, caused this mental infirmity, and they also point to his attempt at suicide, at the time of the shooting, as evidence of his actual insanity. It is perhaps proper to say to you as matter of law, that even if you believe the prisoner really intended to take his own life, this would not be of itself evidence of insanity. It would only be a circumstance

in the case to be considered by you in connection with other facts and circumstances, for the purpose of enabling you to determine the mental condition of the prisoner.　The fact of the attempted suicide raises no presumption of insanity.　Ins. Co. v. Isett, 24 P. F. S. 178.]　(Second assignment of error.)

. . . . [And now I submit to you the case of the Commonwealth of Pennsylvania against John Coyle, Jr.　You and each of you have sworn that you have no convictions unfavorable to capital punishment.　You have said that you have no bias or prejudice for or against the prisoner, and that you had formed no opinion as to his guilt or innocence that would for a moment influence or control your verdict.　You were, therefore, fit to enter the jury box and listen to the evidence and the law.　You have heard both, and now your sworn duty is to render a true verdict upon them.

You are not to be frightened from your duty—from rendering a fair and impartial verdict—by any fear of what the punishment may be.　With that you have nothing to do; it follows the crime, and not the verdict.　It is pronounced by the court, and not by the jury.]　(Fourth assignment of error.)

Verdict guilty, in manner and form as indicted, of murder in the first degree.　Sentence of death was pronounced. Whereupon the defendant took this writ of error, assigning for error the answer of the court to his third point, and the portions of the charge above quoted included within brackets.

*II. I. Fisher* and *W. C. Chapman*, for the plaintiff in error:

*Edward D. Zeigler* and *Geo. W. McElroy*, for the defendant in error.

[Sharswood, C. J. "Clearly," as used in the answer to the defendant's third point is, in my judgment, equivalent to instructing the jury that they must be satisfied beyond a reasonable doubt of the prisoner's insanity, and we have decided that such an instruction is error.]

We submit that the answer to the point is in accord with the authorities.　They all hold that the evidence must be such as to *satisfy* the jury that insanity exists.　In Pannell v. Commonwealth, 5 Nor. at p. 268, Mr. Justice Mercur, in delivering the opinion of the court, said: "That the proof of insanity must be satisfactory and not merely doubtful, to justify an acquittal, is undoubtedly correct . . . It may be established by satisfactory and fairly preponderating evidence."　In Ortwein v. Commonwealth, 26 P. F. S. at p. 424, Agnew, C. J., says: "The evidence of it (insanity) must be satisfactory and not merely doubtful, as nothing less than satisfaction can determine a reasonable mind. to believe a fact contrary to the course of nature."

4 Outerbridge—37

The burden being on the prisoner to satisfy the jury that insanity existed, how can the jury be *satisfied* except where the evidence of insanity clearly preponderates over the presumption of sanity ? No distinction can be drawn between the expression "*clearly* preponderating evidence," as used in this case by the court below, and "*fairly* preponderating evidence," as used by this court in Pannell *v.* Commonwealth, supra. The meaning in each case is that the evidence must preponderate sufficiently to satisfy the jury. A judge is not required to use any particular formula of words, and we submit that the *meaning* conveyed to the jury by the expression complained of is in harmony with the decisions of this court; and the mode of expression, whether standing alone or taken in connection with the context and other parts of the charge, could not have been misunderstood by the jury. The point itself was properly refused, and the expression complained of was used incidentally, without emphasis, at the close of the answer to the point.

Mr. Justice Mercur delivered the opinion of the court, October 4th 1882.

It was clearly proved that Coyle killed Emily Myers. That fact is admitted. The only defence set up is that he was insane at the time.

The first specification assigned for error is that in referring to homicidal insanity the court cited approvingly a portion of the language of Mr. Chief Justice Gibson in Commonwealth *v.* Mosler, 4 Barr 264, in which it is said " there may be an unseen ligament pressing on the mind, drawing it to consequences which it sees but cannot avoid, and placing it under coercion, which, while its results are clearly perceived, is incapable of resistance. The doctrine which acknowledges this mania is dangerous in its relations and can be recognized only in the clearest cases. It ought to be shown to have been habitual or at least to have evinced itself in more than a single instance."

The able argument of counsel has failed to convince us that this was not a correct declaration of the law, or that it has since been ruled otherwise by this court. The validity of such a defence is admitted, but the existence of such a form of mania must not be assumed without satisfactory proof. Care must be taken not to confound it with acts of reckless frenzy. When interposed as a defence to the commission of a high crime, its existence should be clearly manifest; such defence is based on an unsound state or condition of the mind, proved by acts and declarations of violence. It certainly is not requiring too much to hold that it shall be shown in more than a single instance. We know no later case in this state where the precise question has been ruled otherwise.

The second specification relates to the effect which shall
be given to the attempt of the prisoner to take his own life.
This attempt was made immediately after he had fired the
shots which caused the death of his victim.   The language ob-
jected to was not in answer to any point submitted, but appears
in the general charge.   The court said : " It is, perhaps, proper
to say to you, as matter of law, that even if you believe the
prisoner really intended to take his own life, this would not be
of itself evidence of insanity.   It would only be a circumstance
in the case to be considered by you in connection with other
facts and circumstances, for the purpose of enabling you to
determine the mental condition of the prisoner.   The fact of
the attempted suicide raises no presumption of insanity."

The court was dealing with the question of attempted sui-
cide only, and whether that alone was evidence of insanity.   It
adopted the very language used by the court below in American
Life Insurance Company v. Isett's administrators, and affirmed
by this court in 24 P. F. Smith, 176.   In Laros v. Common-
wealth, 3 Norris 200, the defence was insanity.   It was objected
that the court below said to the jury :  " You cannot, however,
infer insanity from the heinous and atrocious character of the
crime, or to constitute it as an element in the proof of actual
insanity."   The answer here was : " The court did not mean to
say that when proof of insanity is given, the horrid and unnat-
ural character of the crime will lend no weight to the proof ;
but meant only that the terrible nature of the crime will not
stand as the proof itself, or an element in the proof of the fact
of insanity.   There is a manifest difference between that which is
actual evidence of a fact, and that which merely lends weight
to the evidence which constitutes the proof.   This is all the
court meant."   So we understand the language used in the
present case to mean, that the attempt to commit suicide, of
itself, is not evidence of the fact of the insanity of the prisoner,
and raises no legal presumption thereof ; but may be considered
by the jury with all the other facts and circumstances bearing
on the questions of insanity.   Suicide may or may not be evidence
of insanity.   Sometimes it may be evidence of a wicked and
depraved heart, familiar with crime ; at others, of despondency
and discouragement; but perhaps more frequently of cowardice,
of a lack of courage to face ignominy or public disgrace, or to
submit to the punishment likely to be imposed on him.

The third specification presents more difficulty.   In answer
to a point submitted, the court charged : " The law of the
state is, that when the killing is admitted, and insanity or
want of legal responsibility is alleged as an excuse, it is the duty
of the defendant to satisfy the jury that insanity actually existed
at the time of the act, and a doubt as to such insanity will not

[Hildebrand *v..* Bowman.]

justify the jury in acquitting on that ground. The law pre-. sumes sanity when an act is done, and that presumption can only be overthrown by clearly preponderating evidence." Excluding the last sentence of this answer, it contains a clear and correct statement of the law. It is not sufficient cause for acquittal of one charged with crime, and defending under a plea of insanity, that a doubt is raised as to its existence. As sanity is presumed, when the fact of insanity is alleged it must be satisfactorily proved : Ortwein *v.* Commonwealth, 26 P. F Smith 414 ; Lynch *v.* Same, 27 Id. 205. The question remains, what degree of proof is necessary to overthrow the presumption of sanity ? The court said it can be " only by clearly preponderating evidence." The court also (misled, it is said, by the language in the brief furnished it) cited the case of Brown *v.* Commonwealth, 28 P. F. Smith 122, as declaring to " establish this defence (viz. insanity), it must be clearly proved by satisfactory and clearly preponderating evidence." This is not the language of that case. It is demanding a higher degree of proof than the authorities require. It may be satisfactorily proved by evidence which fairly preponderates. To require it to " clearly preponderate " is practically saying it must be proved beyond all doubt or uncertainty. Nothing less than this will make it clear to the jury, and make them conclusively convinced. This is not required to satisfy the jury : Hiester *v.* Laird, 1 W. & S. 245. It is not necessary that the evidence be so conclusive as to remove all doubt : Ortwein *v.* Commonwealth, supra ; Brown *v.* Same, supra ; Meyers *v.* Same, 2 Norris, 131 ; Pannell *v.* Same, 5 Id. 260. When one is on trial for his life, care must be taken that he receive from the court that due protection which the law has wisely thrown around him. Evidence fairly preponderating is sufficient.

We discover no error in the fourth specification.

Judgment reversed, and a venire facias de novo awarded.