# Commonwealth *v.* Ferruchi, Appellant.

*Criminal law—Murder—Evidence.*

On the trial of an indictment for murder it appeared that the prisoner shot the deceased five times with a pistol. He claimed that the shooting was in self-defense. There were no eyewitnesses. Immediately after the shooting the deceased was seen fleeing from the deceased's house, and was captured by a policeman while still in flight. The prisoner testified that the deceased attacked him with blows, and that he shot in self-defense. He did not state, however, that he made an outcry, or that he warned the deceased that he was armed and would shoot him if the assault continued. The defendant's hat was found beside the body of the deceased. *Held,* that the evidence was sufficient to sustain a verdict of murder of the first degree.

Argued Oct. 15, 1907. Appeal, No. 258, Jan. T., 1907, by defendant, from judgment of O. & T. Phila. Co., Dec. T., 1906, No. 366, on verdict of guilty of murder of the first degree in case of Commonwealth v. Luigi Ferruchi. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Indictment for murder. Before CARR, J.

The court charged in part as follows:

The question for you to decide in this case is whether the commonwealth has made out its charge against this defendant. It has brought before you several witnesses regarding that. There is Dr. Wadsworth, the coroner's physician, who testifies before you to the finding of the five bullet holes in this man's body in vital parts; there is the testimony of the widow, who says she raised the window and saw the defendant fleeing from the house; there is the testimony of her sister, who heard the shrieks of the widow as she came down the stairs; there is the testimony of the saloon keeper, who came to the door after the shots had been heard, but he saw only the gathering of the people after the body was drawn from the alley upon the pavement outside; there is the testimony of the son of the saloon keeper, who says as he came to the door he saw this man, the prisoner, running, and he fol-

lowed him and gave notice to the policeman, the prisoner having passed by the spot where the policeman was at the call box, and the prisoner was arrested as he reached Marshall and Bainbridge streets, and brought back; there is the testimony also of Antonio, who had been drinking with them, and who described to you that the last man seen with the dead man when Antonio was leaving was the prisoner, and that the two men were together and Antonio left them at the entrance to this house, No. 707 Kater street; there is also the testimony of the man who lives in the house opposite, 712 Kater street, who describes how he saw a certain man running from this house. Again, you have the testimony of officer Davis, who described the arrest of the defendant, and as Davis put his hand in the defendant's pocket Davis drew from it his right hand, and in it was a revolver that was still hot, with the five shots discharged. There is also the testimony of the deputy coroner, Bainbridge, as well as Buckley and Lockhart, who tell you where the hat was found, and they trace it. Then you have the testimony of four other men connected with the police department as to the taking of the statement. [You will bear in mind that the prisoner was then charged and knew that the officers would make use of this statement for or against him. What he said to them he now admits before you was not the truth, and to my mind it tends to bear out what the commonwealth charges, that this was the act of a coward when he imbedded the five bullets in the body of his friend. For you will use your knowledge of human nature and consider if the first thing a coward does is not to lie as one of the means to use to escape from the consequences of his act, and this statement, according to the testimony of the prisoner himself, was an untruth when he knew he was to be charged with having killed this man.] [8]

Therefore, we return to the scene of this incident. You will recall that it is a small house of six rooms, and the entrance is by a door on Kater street, and then you enter a hallway, and on the left is one room, and as you walk back through the hallway or entry there are stairs which run between the two rooms and the hallway still continued back into the yard. This to my mind becomes important, because you must bear in mind that the defense is that the dead man

made an unprovoked assault upon the defendant, that the prisoner had no means of escape, and in order to save his life, being at the time under the mortal fear and dread of great bodily harm, or loss of life, that thereby it became compulsory on him to shoot. Now, if under the evidence you do not believe these facts, and if you believe the prisoner could have escaped, even though attacked ; if you believe he could have fled from the place and could have saved his life without the use of the pistol, then his defense falls to the ground, and you should consider the testimony on the part of the prosecution that it was a deliberate and willful murder. Now, therefore, you will keep in mind what his story is. Having admitted that the first story he told was not the truth, then he tells a second story, that as he stood there, having relieved himself and buttoning his trousers, his friend attacked him, and proceeded to rain the blows upon him, so many as thirty. Now, what would a man have done, and I say you must weigh the credibility of his story. He says he had a moment before found the front door open and had passed through it. What would a man have done ? You must consider that. It is for you to say, not for me. It is for you to weigh the probability and likelihood of his story. He had a revolver ; he knew that he was armed. He knew he had a deadly weapon and he did not want to use it on his friend, as you will remember. What would he have done under those circumstances ? He would have gone out, possibly you will think, the way that he came, because he did not know at that time there was a gate that was bolted, as he claimed it was bolted. You must consider whether he would have taken his chances in finding a bolted gate to stop his way, or whether he would have made an outcry, possibly you will think, but still he says he did not. He did not warn or caution his friend, continuing to beat him, that he was armed and would kill him. He says he did not do that. That is a fact for you to weigh on the credibility of his story. When it came to the point that there was the necessity to shoot, he does not tell you that he warned his friend that he would shoot, and he said he had not made an outcry at the moment he was going to shoot, as he says, to protect his life. That it was to protect his life is a fact for you to find, and if it is not in the evidence

or in your belief from his evidence, then you must find against his plea of self-defense. After he drew the deadly weapon how did he fire? Now, it is for you to consider, weighing the value of his testimony. You will consider what a man would do under such circumstances. Would he have fired to kill or have fired to alarm his assailant, his friend? What would he do? It is for you to say. You are men of the world, and you have been in contact with men before. It is a point for you to decide. You must weigh that and decide where the truth is, because if you believe the commonwealth's contention, it was a cruel and deliberate murder, and you should not hesitate to find it so. On the other hand, if you believe what the defendant says, that at the moment when he fired the first shot, or just after he fired it, his life was in danger, of course that would be self-defense, and you could acquit him, for that would be justifiable. Not only that, but you will consider, weighing the further testimony upon this point, that he did not fire but once, but continued to put bullet after bullet into the man until after the fifth bullet was sent into vital parts, when he dropped. That is what the prisoner says. Then what did the prisoner do? This point is not denied by the prisoner. It is admitted that he ran. That is always a material point for juries to consider after the commission of a crime, if it is a crime. What was the action of the accused? You will bear in mind that his claim before you is that he was absolutely innocent and took this means of saving himself. Now, that is what he wants you to believe here. Therefore, you should consider what his conduct was. Now, you will remember he was in a locality in which his language was spoken. It is an Italian quarter. He said nothing as he ran, but ran by the door of the saloon from which he had just come, where the son of the proprietor was standing. He did not accost the boy, but went on, trotting down Seventh street until he came to Bainbridge, where Policeman Davis was at the box; nor did he tell him about this, but turned and ran east and finally stopped where he was caught by the policeman, being about at a walk when the policeman took him. Is that the conduct and course of a man who is innocent, and who has killed another, as he claims, in self-defense? If you believe it is, of course it should not weigh in your minds as against the

truth of his story.   But I say what he did then, or failed to do, is for you to consider as bearing upon the value and truth of his story, and as to whether what he says was the fact.

Defendant presented these points:

2. The defendant having retreated until his means of escape were cut off, and only used the pistol to defend himself when he apprehended immediate danger and possible loss of life, the shooting was justified and your verdict should be not guilty.   *Answer :* That point is refused, as it omits to refer to other facts in evidence necessary to be found by the jury to justify the shooting, and also requests the court to find facts within the province of the jury under the evidence.  [4]

3. The finding of defendant's hat under the circumstances you have heard should be taken as a corroboration of defendant's story.   *Answer :* That point is refused, as finding the hat tends as much to confirm the contention of the commonwealth.  [5]

4. The condition of the gate should be taken by you as corroboration of defendant's story.   *Answer :* That point is refused for the same reason.  [6]

7. Defendant's testimony is uncontradicted and should be accepted as true, and, if you find that this is so, your verdict should be not guilty.   *Answer:* That point is refused.  [7]

Verdict of guilty of murder of the first degree, upon which judgment of sentence was passed.

*Errors assigned* were (4, 7) above instructions, quoting them.

*D. Howard Conrade,* with him *D. J. McBride,* for appellant.

*Samuel P. Rotan,* district attorney, and *Wm. Findlay Brown,* assistant district attorney, for appellee.

PER CURIAM, November 4, 1907 :

The answers of the learned judge below to the points submitted to him sufficiently explain and vindicate themselves. There is nothing in the case which justifies bringing it here.

The judgment is affirmed and the record remitted to the court of Oyer and Terminer of Philadelphia for purpose of execution.