Commonwealth *v.* Troup, Appellant.

Argued November 24, 1930. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SADLER, SCHAFFER and MAXEY, JJ.

*James G. Glessner,* for appellant.—Malice is presumed from the use of the gun; but malice is also an element in second degree murder: Johnson v. Com., 24 Pa. 386; Kelly v. Com., 1 Grant 491.

Whatever negatives the existence of deliberation, or when not clearly shown to be present, or reasonable doubts of its presence remain, or it does not appear whether life was not taken in passion and tumult, under all such circumstances, the grade is fixed by the presumption of law as of the second degree.

If the evidence raised a reasonable doubt in the minds of the jury as to defendant's belief, he was entitled to that doubt: Tiffany v. Com., 121 Pa. 165.

If several armed men go to a dwelling house in the night time for the purpose of seizing the owner, without lawful authority, and one of them is killed in an effort to prevent the seizure, the killing at most is manslaughter.

When, therefore, on a trial for murder there was evidence tending to show that an attack was made on defendant, so violent as to warrant him in believing that he was in danger of great bodily harm or loss of life unless he used a pistol in self-defense, it was error to refuse to charge that if that evidence raised a reasonable doubt of the crime of murder in the second degree, it would operate to acquit of it: Tiffany v. Com., 121 Pa. 165.

*Ralph F. Fisher,* District Attorney, for appellee, cited: Com. v. Palmer, 222 Pa. 299; Com. v. Nelson, 294 Pa. 544; Com. v. Green, 292 Pa. 579; Com. v. Hopkins, 50 Pa. 9; Com. v. Latampa, 226 Pa. 23; Com. v. Micuso, 273 Pa. 474; Com. v. Nicely, 130 Pa. 261, 271; Com. v. White, 6 Binney 179.

OPINION BY MR. JUSTICE SADLER, January 5, 1931:

Jacob Troup, the defendant, was convicted of murder of the first degree, the jury fixing his punishment

at life imprisonment. . Sentence followed the refusal of a new trial, whereupon the record was removed to this court on appeal, and we are asked to reverse because of several trial errors assigned. A brief statement of the facts involved is necessary to an understanding of the legal objections raised.

From the record it appears that one Albert Toomey first charged Curtis Lehr with the larceny of two calves, and an investigation led .to his admission of the theft, with the declaration that he was assisted in the commission of the crime by William and Jacob Troup. The first information, naming Lehr alone, was sworn to on December 31, 1928, and resulted in a tentative arrangement with the prosecutor to adjust the matter by the payment of $50, the value of the property stolen, but this settlement was not in fact consummated. A second complaint by the owner of the goods taken, naming the two Troups, bears the same date, but was not actually prepared by the justice until one month later, as a result of an oral direction by Toomey that they be also joined as parties. No attempt was made to arrest any of those implicated at the time, but an order for the apprehension of Jacob, defendant in the case before us, issued on January 30, 1929, and was in the hands of the officers when the murder now in question took place. The court affirmed points presented to the effect that if the warrant directing the arrest of Jacob had been improperly delivered to the constable, those acting thereunder were trespassers, but rightly instructed the jury that this fact would not excuse the homicide charged if the killing was malicious, and the evidence showed the presence of the other. elements necessary to a conviction of the first degree: Brooks v. Com., 61 Pa. 352; see also, Com. v. Grether, 204 Pa. 203, 206; Com. v. Miller, 258 Pa. 226.

The jury was justified in finding that the accused knew of the outstanding charge and the consequent danger of arrest. .He informed a friend of his intention

to leave the state, since the police were after him, stating that he would "blow at" the first officer who tried to seize him. This threat was repeated after his return from Virginia a few weeks thereafter, and, again, on the afternoon of the homicide with which we are at present concerned. The fact that reference was made therein to a class of persons,—all officers,—rather than to the individual one actually killed, did not affect their admissibility: Com. v. Page, 265 Pa. 273. The first declaration of this purpose to resist arrest, made nine days before the murder, was to the same effect as that stated on the day of the killing, and, though entitled to less weight, was nevertheless properly received as part of the Commonwealth's case (Henry on Trial Evidence, p. 41), and could not be rejected on the ground of remoteness: Hopkins v. Com., 50 Pa. 9; Com. v. Latampa, 226 Pa. 23. The seventh and eighth assignments, complaining of the admission of this proof, cannot therefore be sustained.

On May 21, 1929, Altland, the constable, having possession of one copy of the warrant, learned that the defendant could be found at his father's home, and determined to make the arrest. Accompanied by two citizens and a policeman, at the time in regular uniform, who also held the office of deputy sheriff, he approached the defendant's lonely retreat between nine and ten in the evening. With one of his assistants he went to the front door, while Sowers, the deceased officer, and the fourth member of the party, took up a position near the rear of the house. When Troup heard Altland knock on the front door, the former signalled his companions in the living room to be silent, reached for a gun standing by the wall, and immediately passed into the adjoining darkened kitchen. He pushed the back door open part way, and fired at the one standing outside. Evidence was offered to show that Sowers, the policeman killed, threatened to shoot before the defendant discharged his gun, but this testimony is contradicted.

Bentzel, standing with the murdered man, stated the latter used only these words: "Come on out, its no use your hiding in there," to which Troup replied: "I am not going to shoot." At once he fired through the partly opened door, causing the death of Sowers, and then fled. He surrendered five days later to those in search of him.

Defendant claimed that he intended to escape by the rear, but, on reaching the door, saw something shining, presumably a revolver, heard threats, and then discharged his gun in self-defense. He stated that he feared an attack from enemies of himself or his father, who he believed intended to kill him or inflict serious bodily harm. This contention was fairly submitted to the jury, but it is urged in the fourth assignment that the court limited too narrowly its instruction as to the right to take the life of another in self protection when he said the defendant was bound, if reasonably possible, to retreat or withdraw from the apprehended danger. It will be remembered that the officers made no attempt to enter the home with violence or make an illegal arrest. The eighth point of defendant, asserting the right to defend his dwelling place from unlawful attack was affirmed, though there was no evidence that the shooting resulted from such attempted invasion. Even if the process in the hands of the officers was irregular, and in consequence reduced them to the status of trespassers, defendant had no right to kill, unless there was ground to anticipate the infliction of serious harm, and the facts showed the danger was actually imminent or reasonably to be expected. He was attempting to escape from arrest, and shot one, standing outside the house, who in no way threatened to do him injury, if the story of Bentzel is to be believed, and the jury accepted it as verity.

It is further urged that error was committed in declining to charge, as requested in the fifth point, that if the testimony as to self-defense in itself, irrespective

of the other evidence adduced, raised a reasonable doubt in the minds of the jurors of the guilt of defendant they should acquit. Defendant attempted to set up an affirmative excuse, and the burden was therefore on him to establish it by the preponderance of the evidence, to be effective and justify a verdict exonerating him from responsibility. It was not sufficient to raise a doubt as to his probable belief of existing danger of being killed or seriously injured, for, in such case, he must show by the weight of the testimony facts excusing the homicide. As was said in Com. v. Palmer, 222 Pa. 299, 302, approved in Com. v. Colandro, 231 Pa. 343, and Com. v. Nelson, 294 Pa. 544: "The burden of proving self-defense is not placed heavily upon one accused of taking life. Sacred as is human life, he is not bound to show beyond all doubt that he was compelled to take it, but is humanely permitted to satisfy the jury by a fair preponderance of the testimony that he killed under circumstances justifying his belief that his own life could not otherwise have been saved. To doubt, however, even to reasonably doubt, that life was taken in self-defense, is not to be satisfied that it was so taken, and when this affirmative defense is left in doubt it has not been established at all as a basis for acquittal." Ordinarily, a defendant is entitled to an acquittal if an honest question of his guilt is engendered from any or all the evidence offered: Tiffany v. Com., 121 Pa. 165. Such must arise out of evidence essential to the Commonwealth's case, whether bearing on some isolated point or the whole of the evidence: Com. v. Green, 292 Pa. 579. Where, however, the right to a verdict rests on defendant's establishing by affirmative and satisfying proof some fact, it is not sufficient for him to merely raise a doubt as to its existence.

The fifth assignment complains of the statement in the charge that a presumption of illegal killing arises where death is intentionally inflicted by the use .of a deadly weapon directed to a vital part of the body.

Proof of such conduct raises no presumption of law that the murder is of the first degree, but justifies an assumption of fact that malice and the intention to kill existed. The words employed by the court in its charge were justified by our cases, as will be disclosed by an examination of the recent opinion of Mr. Justice SCHAFFER, in Com. v. Green, 294 Pa. 573, 584. It was there said, in part: "To set at rest any doubt on this matter, we now lay down the principle that where one without sufficient cause of provocation unlawfully kills another by the use of a deadly weapon upon a vital part with a manifest intent so to use it, the presumption of fact arises, in the absence of qualifying circumstances, that he intended the consequence of his act and to kill his victim......We can imagine no act more strongly indicative of an intent to kill than the deliberate shooting of a bullet into another's head. From such circumstances, without qualifying facts, the presumption of fact that the slayer intended to take life must arise in a reasoning mind and a trial judge is justified in calling this presumption to the attention of the jury."

One other matter requires consideration. The indictment charged a felonious killing, under which a verdict of either first or second degree would have been justified, as the jury was told. The foreman orally stated the finding to be "guilty in the first degree with life imprisonment," and this declaration was received by the court and directed to be so recorded. Through inadvertence, it was entered by the clerk in these words: "Guilty in manner and form as he stands indicted," adding "with penalty of life imprisonment." Had the jury actually limited its finding to a statement as found in the first portion of the sentence recited, the offense of which defendant was convicted would not rise above second degree, and the court would have been restrained in passing sentence to the punishment fixed by statute for that crime: Johnson v. Com., 24 Pa. 386. The verdict did, however, fix the degree. Had it failed to do so,

254

the jury could have been sent back to supply the omission (Com. v. Nicely, 130 Pa. 261; Com. v. Micuso, 273 Pa. 474; Com. v. Huston, 232 Pa. 209), but there can be no doubt of its intended finding in the present case. The clerk omitted the words "first degree" in formally recording, though stating the punishment fixed which could only have followed a finding to that effect. The mistake in the entry on the docket, as here appears, was properly corrected to accord with the actual announcement made: Com. v. Hafner, 89 Pa. Superior Ct. 173. The court did not err in disregarding the palpable error of the officer and passing sentence of life imprisonment, as directed by the finding returned.

A careful examination of the record convinces us that all the elements essential to a conviction of murder of the first degree were proved, justifying the verdict, if the evidence submitted was believed by the jury. It is not for this court to usurp its function, and pass upon the credibility of the witnesses whose stories were conflicting: Com. v. Watkins, 298 Pa. 165.

The assignments of error are overruled and the judgment of the court below is affirmed; the record to be remitted in order that the sentence may be carried out.