Commonwealth *v.* Burns, Appellant.

Argued April 13, 1951. Before STERN, STEARNE, JONES, LADNER and CHIDSEY, JJ.

*William G. Schrier,* with him *Maurice L. Epstein,* for appellant.

*C. Wayne Smyth,* District Attorney, with him *Andrew Duvall,* Special Assistant District Attorney, for appellee.

OPINION BY MR. JUSTICE HORACE STERN, May 21, 1951:

Defendant, Helen Burns, appeals from a conviction of voluntary manslaughter and sentence thereon. She shot and killed her son-in-law, Doyle Reed. Her contention is (1) that the evidence was not sufficient to sustain the verdict, and (2) that the trial court erred in its charge to the jury as to the burden placed upon her to establish her claim of self-defense.

The facts need not be recited in elaborate detail. Doyle Reed was a heavy drinker, and, when drunk, was extremely *quarrelsome;* whether he was *dangerous* at such times was a matter of controversy at the trial. From time to time he hurled abusive language at the defendant and at his wife, and he also made threats to kill them, but whether these were serious or were ever so regarded is extremely doubtful. At best, or rather at worst, he was an undesirable member of the household. On the day of the homicide he returned home from work, gave his wife $19, and went away to look for a job. When he returned he was drunk, behaved very badly, and demanded from her a return of the $19; this was refused and he was ordered to leave, which he did. He came back later in the eve-

ning in a maudlin condition and started banging on the back door which was shut and locked. Defendant opened the inside door, which was wooden and glass panelled, but left the screen door locked. After some arguments and threats on his part and an insistent demand for a return of the money, defendant went upstairs, got her husband's revolver, came down, and told Reed that she had a gun and if he did not go away she would use it. He thereupon made renewed threats against her, her daughter and her grandchildren, and, throwing away a sheet metal canner with which he had been pounding on the screen door, he put his shoulder to the door as if to force it open. Although he was wholly unarmed, defendant, at a distance of only three or four feet, shot twice through the screen, killing him instantly. She testified that she did this in fear of his being able to break into the house and do great bodily harm to herself and the other members of the household and perhaps even kill them. Whether the circumstances reasonably justified such apprehension on her part was a crucial question at the trial.

In an extremely lengthy charge which covered all phases of the applicable law of homicide the court left to the jury the determination of defendant's guilt or innocence, and, if guilty, the nature and degree of the crime which she had committed. While a verdict of murder, even of the first degree, was at least technically justifiable under the evidence, the decisive issue was whether she had reasonable cause for fear which would have entitled her to an acquittal on the ground of self-defense, or whether, in the absence of such cause, she was emotionally aroused by Reed's conduct to a state of passion or panic which deprived her of the power of judgment in dealing with the situation which confronted her. A reading of the testimony leads clearly to the conclusion that the verdict, guilty of manslaughter, was not unwarranted by the evidence.

Defendant asserts that the court erred in its charge in saying that "If the evidence clearly establishes the killing by the defendant purposely with a deadly weapon, an illegal homicide of some kind is established and the burden then falls upon the defendant and not upon the Commonwealth to show that it was excusable as an act of self-defense. If then, her evidence leaves her extenuation in doubt, she cannot be acquitted of all crime, but should be convicted of homicide in some of its grades—manslaughter at least." The statement thus objected to stems originally from *Commonwealth v. Drum,* 58 Pa. 9, 22, and has been repeated, either verbatim or in substantially similar language, in a multitude of subsequent cases.[1] The claim of self-defense has always been held to be a so-called "affirmative" defense which admits the killing but attempts to justify it (*Commonwealth v. Flori,* 300 Pa. 125, 133, 150 A. 290, 293), and the burden is placed upon the defendant to establish it, not beyond a reasonable doubt, but by the fair weight or preponderance of the evidence.[2] The court so instructed the jury. Nor did it, as defendant contends, limit her proof of self-defense to her own testimony, but, on the contrary, made it very clear that, as prescribed in *Commonwealth v. Colandro,* 231 Pa. 343, 349, 80 A. 571, 573, the jury should consider on that question all the evidence in

---

[1] *Ortwein v. Commonwealth,* 76 Pa. 414, 423, 424; *Commonwealth v. Palmer,* 222 Pa. 299, 71 A. 100; *Commonwealth v. Calhoun,* 238 Pa. 474, 485, 86 A. 472, 476; *Commonwealth v. Weinberg,* 276 Pa. 255, 260, 120 A. 406, 408; *Commonwealth v. Walker,* 283 Pa. 468, 473, 129 A. 453, 454; *Commonwealth v. Nelson,* 294 Pa. 544, 547, 144 A. 542, 543, 544; *Commonwealth v. Yeager,* 329 Pa. 81, 92, 196 A. 827, 833.

[2] *Commonwealth v. Colandro,* 231 Pa. 343, 349, 350, 80 A. 571, 573; *Commonwealth v. Ross,* 266 Pa. 580, 583, 110 A. 327, 328; *Commonwealth v. Troup,* 302 Pa. 246, 252, 153 A. 337, 340; *Commonwealth v. Yeager,* 329 Pa. 81, 91, 92, 196 A. 827, 833.

the case, whether it came from her side, or from the Commonwealth's side, or from both. It is true that the part of the charge above quoted from *Commonwealth v. Drum* and later cases is open, perhaps, to the criticism that it might be interpreted as meaning that if the evidence as to self-defense leaves *any* doubt whatever in the minds of the jury the defendant cannot be acquitted of all crime but should be convicted at least of manslaughter, whereas, there may, of course, be *some* residuum of doubt even as to a fact established by the preponderance of the evidence: *Commonwealth v. Ross*, 266 Pa. 580, 583, 110 A. 327, 328. The more normal construction, however, would be that the doubt referred to means a doubt as to whether the defendant had established her claim of self-defense by the weight of the evidence. Moreover, the charge must be read as an entirety, and, when so read, it is abundantly clear that the suggested criticism is not justified in the present instance because the court not only correctly stressed the important limitations of the burden of proof imposed upon the defendant but repeated over and over again the warning that no conviction could be had unless the jury were convinced beyond a reasonable doubt of every fact necessary to a conclusion of guilt, and that even if they rejected the plea of self-defense they should still consider *all* the evidence on that subject together with *all* the evidence in the case in the determination of the question of guilt, the burden being upon the Commonwealth throughout to prove guilt beyond a reasonable doubt.

The case was tried fairly and with even meticulous care, and there is nothing in the record which would justify, much less compel, a reversal.

Judgment and sentence affirmed.