Commonwealth *v.* Winebrenner, Appellant.

Argued January 16, 1970. Before BELL, C. J., JONES, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*F. Emmett Fitzpatrick, Jr.,* with him *Joseph Michael Smith,* for appellant.

*Oscar F. Spicer,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, April 28, 1970:

Thomas Winebrenner was shot and killed at approximately 7:00 o'clock on the night of Tuesday, August 20, 1968. A few hours after the killing, the victim's spouse, Karen Elaine Winebrenner, was arrested and charged with the murder of her husband. Her trial by a Judge and jury resulted in a verdict of guilty of murder in the second degree. Defendant, through her attorneys, then filed a motion in arrest of judgment and a motion for a new trial, each of which was denied. Karen Winebrenner was sentenced to undergo imprisonment for a term not to exceed twelve years. From the judgment of sentence she took this appeal.

Defendant contends (1) that the evidence was insufficient to prove her guilty of any crime charged, and (2) that the evidence was insufficient to prove malice, and (3) that her admissions proved that she shot in self-defense, and (4) that the Court committed reversible errors in its charge concerning self-defense. None of these contentions has any merit.

Before discussing the evidence and the contentions of the defendant, we think it would be helpful if we first considered several pertinent principles of law.

In *Commonwealth v. Commander,* 436 Pa. 532, 260 A. 2d 773, the Court said (pages 536, 537, 538-539): " ' ". . . 'Murder . . . is defined as an unlawful killing of another with malice aforethought, express or implied.' . . .

" ' "*Malice**\* express or implied is the criterion and absolutely essential ingredient of murder. Malice in its legal sense exists not only where there is a particular ill will, but also whenever there is a wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences and a mind regardless of social duty. Legal malice may be inferred and found from the attending circumstances. [Accord: Commonwealth v. Chermansky, 430 Pa. 170, 242 A. 2d 237; Commonwealth v. Lawrence, 428 Pa. 188, 236 A. 2d 768; Commonwealth v. Carroll, 412 Pa. 525, 194 A. 2d 911.] . . ." '

"The test for the *sufficiency* of evidence to support a murder conviction is likewise well settled. In Commonwealth v. Frye, 433 Pa. 473, 252 A. 2d 580, the Court affirmed a conviction of murder, and said (page 481): 'It is hornbook law that the test of the sufficiency of the evidence—irrespective of whether it is direct or circumstantial, or both—is whether, accepting as true all the evidence and all reasonable inferences therefrom, upon which if believed the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted. Commonwealth v. Finnie, 415 Pa. 166, 202 A. 2d 85; Commonwealth v. Burns, 409 Pa. 619, 634, 187 A. 2d 552; Commonwealth v. Kravitz, 400 Pa. 198, 161 A. 2d 861; Commonwealth v. Williams, 432 Pa. 557, 248 A. 2d 301 (1968).' See also, Commonwealth v. Terenda, 433 Pa. 519, 252 A. 2d 635; Commonwealth

---

\* Italics throughout, ours, unless otherwise noted.

v. Lawrence, 428 Pa., supra; Commonwealth v. Tabb, 417 Pa. 13, 16, 207 A. 2d 884. . . .

" ' "The specific intent to kill which is necessary to constitute, in a nonfelony murder, murder in the first degree, may be found from a defendant's words or conduct or from the attendant circumstances together with all reasonable inferences therefrom, *and may be inferred from the intentional use of a deadly weapon on a vital part of the body of another human being:*\* Commonwealth v. Tyrrell, 405 Pa., supra; Commonwealth v. Moore, 398 Pa. 198, 157 A. 2d 65; Commonwealth v. Nelson, 398 Pa. 359, 152 A. 2d 913; Commonwealth v. Ballem, 386 Pa. 20, 123 A. 2d 728; Commonwealth v. Heller, 369 Pa. 457, 87 A. 2d 287; Commonwealth v. Jones, 355 Pa. 522, 50 A. 2d 317." ' " Accord: *Commonwealth v. Finnie,* 415 Pa., supra.

All other kinds of murder, except murder which is perpetrated by means of poison or by lying in wait or by any other kind of willful, deliberate and premeditated killing, or which is committed in the perpetration of or the attempt to perpetrate certain statutorily enumerated felonies, are murder in the second degree. Act of June 24, 1939, P. L. 872, §701, as amended, 18 P.S. §4701. See, *Commonwealth v. Ahearn,* 421 Pa. 311, 317, 218 A. 2d 561; *Commonwealth v. Finnie,* 415 Pa., supra; *Commonwealth v. Carroll,* 412 Pa., supra.

### MOTION IN ARREST OF JUDGMENT

In *Commonwealth v. Terenda,* 433 Pa., supra, the Court said (page 523): "In Commonwealth v. Tabb, 417 Pa. 13, 207 A. 2d 884, the Court said (page 16): 'In passing upon such a motion [in arrest of judgment], the sufficiency of the evidence must be evaluated upon the *entire trial record.*\*\* All of the evidence

---

\* Italics in *Commonwealth v. Commander.*

\*\* Italics in *Commonwealth v. Tabb.*

must be read in the light most favorable to the Commonwealth and it is entitled to all reasonable inferences arising therefrom. The effect of such a motion is to admit all the facts which the Commonwealth's evidence tends to prove. See, Commonwealth v. Moore, 398 Pa. 198, 157 A. 2d 65 (1959), and Commonwealth v. Wright, 383 Pa. 532, 119 A. 2d 492 (1956). . . .' "

Considered in the light of the above-mentioned standards, tests and principles, the salient facts are as follows: Mr. and Mrs. Winebrenner experienced marital difficulties prior to August 20, 1968, the day the homicide was committed. Four days before the shooting, the defendant stated to the check-out clerk at the local grocery store: "Oh, that Tom, I will kill him or something. I just can't keep living like this." On the night of the homicide, at approximately 7:30 p.m., Charles Rouch, the Chief of Police of the township where the Winebrenners lived, received a telephone call in which the caller, whom the Chief of Police identified as the defendant, said: "Charles, come quick! This is Butch [Karen] Winebrenner. Tom tried to kill me; I shot him! And I think he is dead!" Thelma Seig, a neighbor of the Winebrenners, testified that she also received a telephone call from the defendant on the night in question, in which the defendant said: "Come quick, I need help. I shot Tom." Mrs. Seig also testified that defendant told her that "[Tom] had threatened to kill her and she had shot him."

When the ambulance arrived, the medical personnel found the dead husband lying on his back behind the house occupied by him and the defendant.* The victim's feet were pointed in the direction of the house, with one foot resting on the lowest step. There was a hole in his abdomen, caused by a shotgun fired from close

---

* The ambulance, responding to a telephone call from Police Chief Rouch, arrived at the Winebrenner house prior to the police.

range.** A State Police firearms expert testified that in his opinion the fatal shot was fired when the muzzle of the shotgun was approximately ten feet from the victim. No weapon, and nothing of any unusual nature, was found in the victim's hands or near his body. The defendant was in the kitchen, inside the house. A shotgun with an odor of having been recently fired was on the sink counter and an expended shell was on the floor in the kitchen. Several shells were found in defendant's jacket which were of the same type as the expended shell. A witness for the Commonwealth later testified that defendant was an experienced hunter.

The aforesaid evidence was undoubtedly sufficient to support a finding or verdict that defendant shot and killed her husband and was guilty of murder in the first or second degree.

### Malice

Defendant next contends that, even admitting she had unlawfully killed her husband, the Commonwealth failed to prove beyond a reasonable doubt that the killing was malicious. We disagree.

It is true that malice is an absolutely essential ingredient of murder (cases supra). *Legal malice* may be inferred and found from the attending circumstances, and, like the specific intent to kill, may be inferred from the intentional use, without legal excuse or legal justification, of a deadly weapon on a vital part of another human body: *Commonwealth v. Troup*, 302 Pa. 246,

---

** Dr. Carl Johnson, the pathologist at Annie M. Warner Hospital, Gettysburg, testified that, in his opinion, "the cause of death would be gunshot wound of the abdomen with multiple perforations of the small and large intestines, and complete severing of the ileum ; and the complete severing of the inferior vena cava and aorta." In addition, he testified that "it was . . . a fairly clean entrance wound without . . . ragged surfaces. . . ."

252, 253, 153 Atl. 337; *Commonwealth v. Green,* 294 Pa. 573, 581, 144 Atl. 743; *Commonwealth v. Wucherer,* 351 Pa. 305, 311, 312, 41 A. 2d 574. Cf. also, *Commonwealth v. Ewing,* 439 Pa. 88, 264 A. 2d 661 (1970); *Commonwealth v. Drum,* 58 Pa. 9 (1868).

In *Commonwealth v. Troup,* 302 Pa., supra, the Court said (pages 252-253): "The fifth assignment complains of the statement in the charge that a presumption of illegal killing arises where death is intentionally inflicted by the use of a deadly weapon directed to a vital part of the body. Proof of such conduct raises no presumption of law that the murder is of the first degree, *but justifies an assumption of fact that malice and the intention to kill existed.*"

In *Commonwealth v. Green,* 294 Pa., supra, the Court said (page 581): "'... when a responsible person, without authority and under such circumstances as indicate deliberation without apparent provocation or necessity, *wounds another in a vital part with a deadly weapon, then malice is to be inferred':* Wharton's Criminal Evidence, Vol. 2, 10th ed., section 764."

In *Commonwealth v. Wucherer,* 351 Pa., supra, the Court said (page 311): "... where a felonious homicide* is proved, malice is *presumed to have existed,* not conclusively, *not as a so-called 'presumption of law'* or irrebuttable presumption, *but as a presumption of fact,* which, as stated in Commonwealth v. Kluska, 333 Pa. 65, 69, 3 A. 2d 398, 401, 'is but a prima facie inference which can be rebutted by testimony to the contrary' either by the accused himself denying such malice or by any other appropriate evidence." Cf. also, *Commonwealth v. Ewing,* 439 Pa. 88, 264 A. 2d 661 (1970);

---

* In *Commonwealth v. Wucherer,* 351 Pa., supra, the Court said (page 310): "... felonious homicide, ... according to Blackstone (4 Com. 188) is 'the killing of a human creature ... without justification or excuse.'" See also, *Commonwealth v. Johnston,* 438 Pa. 485, 263 A. 2d 376 (1970).

*Commonwealth v. Gibbs,* 366 Pa. 182, 76 A. 2d 608; *Commonwealth v. Gidaro,* 363 Pa. 472, 70 A. 2d 359.

The evidence, together with all reasonable inferences therefrom, was clearly sufficient to prove that defendant used a deadly weapon upon a vital part of her husband's body and thereby raised a factual presumption that the homicide was both felonious and malicious, and the jury could believe that the evidence on behalf of the defendant did not overcome this presumption.

## Defendant's Admissions

The Commonwealth presented testimony from Police Chief Rouch and from Mrs. Seig of their telephone conversations with the defendant on the night of the killing, primarily to prove that the defendant was the person who shot and killed her husband, and that this shooting amounted to a felonious homicide. Although defendant did not testify, these telephone conversations also mentioned or indicated a possible defense, i.e., self-defense, and therefore defendant contends that they would wipe out the factual presumption of malice, and would absolve her of murder because they showed that she killed her husband in self-defense. In order to support this contention, she argues that the jury was required to accept as true the telephone conversations between herself and Rouch and Mrs. Seig *in their entirety, or not at all.* To support this contention, defendant relies upon *Commonwealth v. Jackson,* 362 Pa. 469, 66 A. 2d 841, which, she argues, holds that the jury could not accept as true a part of what defendant said to the two above-mentioned Commonwealth witnesses and reject the remaining parts of her conversations with them. Neither *Commonwealth v. Jackson* nor any other authority supports such a contention or principle. In *Jackson,* the defendant made two statements—one oral and the other written. The oral statement was es-

sentially that "he slapped me and I stabbed him." The written statement, made almost contemporaneously with the oral one, was much more comprehensive and exculpated her from any guilt. The Court pertinently said (pages 474, 475) : "The foregoing quoted portions of the record constitute the sum and substance of the relevant evidence offered by the Commonwealth concerning the commission of the alleged crime. Plainly enough, it fell far short of tending to prove beyond a reasonable doubt the defendant's guilt of the crimes charged in the indictment. Indeed, if the evidence be accredited (and the Commonwealth offered it as being credible), it establishes that the defendant acted justifiably in the circumstances in self defense and was not, therefore, guilty of any crime. If, however, the evidence be rejected, there is nothing left in the case but uncertain suspicion. . . . The shadowy inference which the district attorney draws from the one sentence in the defendant's recounted oral statement was far from sufficient to establish her guilt of the crimes charged beyond a reasonable doubt. Because of the insufficiency of the evidence as a matter of law, the conviction cannot stand."

It is, therefore, apparent that neither *Jackson* nor any other authority supports defendant's contention that a jury is compelled to believe the entirety of her statements, if they believe any part thereof. Moreover. what this Court said in *Commonwealth v. Kirkland,* 413 Pa. 48, 195 A. 2d 338, is particularly applicable here (page 58) : "[I]t is well settled that a jury or a trial Court can believe all or a part of or none of a defendant's statements, confessions or testimony, or the testimony of any witness: Commonwealth v. Melton, 406 Pa. 343, 178 A. 2d 728; Commonwealth v. Tyrrell, 405 Pa. 210, 174 A. 2d 852; Commonwealth v. Ballem, 386 Pa. 20, 123 A. 2d 728; Commonwealth v. Donough, 377 Pa. 46, 50, 103 A. 2d 694; Commonwealth v. Ho-

meyer, 373 Pa. 150, 153, 94 A. 2d 743; Commonwealth v. Phillips, 372 Pa. 223, 93 A. 2d 455."

In *Commonwealth v. Chermansky,* 430 Pa. 170, 242 A. 2d 237, the Court said (page 174) : "In arguing that the evidence was insufficient to convict, Chermansky apparently assumes that, since his explanation of the killing was not contradicted at trial, it must be accepted as true and the killing declared justifiable as a matter of law. This position is incorrect.

"Firstly, the truthfulness of Chermansky's testimony was for the jury to determine. Even though it was uncontradicted, the jury still had the right to accept it totally, to believe part of it or to reject it completely. Commonwealth v. Wilkes, 414 Pa. 246, 199 A. 2d 411 (1964)."

The Order denying defendant's motion in arrest of judgment is affirmed.

## MOTION FOR A NEW TRIAL

Defendant contends, in the alternative, that the lower Court committed fatal error when it instructed the jury that the defendant has the burden of proving her assertion of self-defense by a fair preponderance of the evidence. For this proposition, she overlooks the recent decisions of this Court and relies upon *Commonwealth v. Bonomo,* 396 Pa. 222, 151 A. 2d 441. In *Bonomo,* the defendant raised the defense of *alibi* to the various criminal charges lodged against him. The Court pertinently said (pages 231-232) : "Since the trial of the present case Mr. Justice BELL pointed out in Commonwealth v. Richardson, 392 Pa. 528, 140 A. 2d 828, after reviewing many prior decisions, that a practical rule ought to be evolved. Following that suggestion we deem it our duty to set forth explicitly the rule which shall be followed hereafter in this jurisdiction. The Commonwealth has the burden of proving every es-

sential element necessary for conviction. If the defendant traverses one of those essential elements by evidence of alibi, his evidence will be considered by the jury along with all the other evidence. It may, either standing alone or together with other evidence, be sufficient to leave in the minds of the jury a reasonable doubt which, without it, might not otherwise exist. It will be the duty of the trial judge to carefully instruct the jury as to the relationship of the evidence of the prosecution and the evidence of the defendant as each bears upon the essential elements of the crime charged."

Defendant argues that the Court, in and by its decision in *Bonomo,* intended to *eliminate all affirmative defenses* in the criminal law of Pennsylvania. We disagree.* If, indeed, any doubt as to the scope of our decision in *Bonomo* does in fact exist, we now utilize this opportunity to resolve the confusion. In *Bonomo,* we *did not, nor did we intend to eliminate affirmative defenses in the criminal law of Pennsylvania,* and we do not consider "alibi" as an affirmative defense.

An analysis will demonstrate, we repeat, that an alibi is not an affirmative defense; an affirmative defense is one in which the defendant admits the commission of the killing but seeks to justify or excuse it.

---

* Dean BURTON R. LAUB, in his authoritative and very able Pennsylvania Trial Guide, states (1959-1969 Cumulative Supp., page 124): "Since the decision in Commonwealth v. Bonomo, 396 Pa. 222, 151 A. 2d 441, which eliminated alibi as an affirmative defense, there is speculation whether the Supreme Court did not intend to eliminate all affirmative defenses in the criminal law of Pennsylvania. The Supreme Court's criticism of the old practice of charging the jury in affirmative defense cases as to the shifting yet nonshifting burden of proof was sufficiently broad to indicate the court's dissatisfaction with this type of instruction. *On the other hand, alibi ought never to have been considered an affirmative defense and it may be that the Supreme Court was merely correcting this phase of the law without intending to dislodge true affirmative defenses such as self-defense, intoxication, etc.*"

When a defendant who is charged with a felonious homicide offers evidence of an alibi, he is not actually or practically attempting to excuse or justify his commission (or any participation in the commission) of the homicide. Instead, he is asserting and attempting to prove that he did not and could not have committed the homicide because he was not even present thereat, but was far away from the place or scene of the homicide, and for this reason did not commit or could not have committed this homicide. His defense, therefore, is not an excuse or justification for the killing or his participation therein. On the other hand, when a defendant who is charged with felonious homicide presents evidence that the killing was committed in self-defense, he admits that he killed (or participated in the killing of) the deceased but attempts to avoid criminal liability by contending that the killing was justifiable or excusable.

When a defendant relies upon a defense which is accurately and realistically a true affirmative defense, such as, for example, self-defense, the law of Pennsylvania has been long and well established in a multitude of cases that the defendant has the burden of proving every actual and real affirmative defense by a fair preponderance of the evidence. *Commonwealth v. Johnston*, 438 Pa. 485, 263 A. 2d 376; *Commonwealth v. Corbin*, 426 Pa. 24, 27, 231 A. 2d 138; *Commonwealth v. Wilkes*, 414 Pa. 246, 199 A. 2d 411; *Commonwealth v. Noble*, 371 Pa. 138, 88 A. 2d 760; *Commonwealth v. Burns*, 367 Pa. 260, 80 A. 2d 746. In *Commonwealth v. Wilkes*, 414 Pa., supra, the Court said (pages 249-250) : "Further, self-defense is an affirmative defense and the burden of proving it is upon him who asserts it by the preponderance of the evidence: Commonwealth v. Burns, 367 Pa. 260, 80 A. 2d 746 (1951), and Commonwealth v. Noble, 371 Pa. 138, 88 A. 2d 760 (1952). This burden never shifts. The Commonwealth is under no obligation to prove that the defend-

ant did not kill in self-defense. See, Commonwealth v. Iacobino, 319 Pa. 65, 178 A. 823 (1935), and Commonwealth v. Updegrove, 413 Pa. 599, 198 A. 2d 534 (1964)."

In *Commonwealth v. Burns*, 367 Pa., supra, another unanimous Court, speaking through Mr. Justice (later Chief Justice) HORACE STERN, said (page 263) : "The claim of self-defense has always been held to be a so-called 'affirmative' defense which admits the killing but attempts to justify it (Commonwealth v. Flori, 300 Pa. 125, 133, 150 A. 290, 293), and the burden is placed upon the defendant to establish it, not beyond a reasonable doubt, but by the fair weight or preponderance of the evidence."[*]

Nevertheless, the defendant's burden of proving self-defense by a fair preponderance of the evidence does not relieve the Commonwealth from proving, beyond a reasonable doubt, defendant's guilt of the crime charged. Cf. *Commonwealth v. Burns*, 367 Pa., supra, at pages 263, 264; *Commonwealth v. Green*, 292 Pa. 579, 141 Atl. 624; *Commonwealth v. Colandro*, 231 Pa. 343, 80 Atl. 571; *Commonwealth v. Palmer*, 222 Pa. 299, 71 Atl. 100; *Commonwealth v. Ferruchi*, 219 Pa. 155, 68 Atl. 41; *Commonwealth v. Wireback*, 190 Pa. 138, 42 Atl. 542; *Alexander v. Commonwealth*, 105 Pa. 1; *Coyle v. Commonwealth*, 100 Pa. 573; *Ortwein v. Commonwealth*, 76 Pa. 414. See also, IV Blackstone, Commentaries §201.

Considering the charge of the Court in its entirety, as we must, we find no reversible error.

Judgment of sentence affirmed.

Mr. Justice JONES and Mr. Justice POMEROY concur in the result.

Mr. Justice COHEN took no part in the consideration or decision of this case.

---

[*] Citing eleven decisions of this Court.